*In re* ANTONIO RÍOS ACOSTA.

*Número:* 5218       *Resuelto:* 3 de mayo de 1991

*Govén D. Martínez Surís, Director de la Oficina de Inspección de Notarías,* en informe; *Antonio Ríos Acosta, pro se.*

I

PER CURIAM: El pasado 27 de agosto de 1990 el Director de la Oficina de Inspección de Notarías, Lcdo. Govén D. Martínez Surís, comunicó al Juez Presidente Señor Pons Núñez la situación de deterioro sustancial de los Protocolos del notario Antonio Ríos

Acosta, según informe rendido por el Inspector Gerónimo Lluberas Kells.(1)

---

(1) Fundamentado en la versión del notario Ríos Acosta, a los efectos de que a principios de agosto de 1990 encontró "que varias escrituras de [su] protocolo había [sic] sido sacadas de [su] despacho y las habían dejado en la biblioteca, dentro de una caja en la que se guardan las copias certificadas de las escrituras que vienen del Registro de la Propiedad y no han sido reclamadas por los clientes. Al notar que a los mismos le[s] fueron arrancados los sellos procedi[ó] a realizar investigación correspondiente y se procedió a inspeccionar los libros de protocolo bajo [su] poder.

"Luego de comenzar a buscar todos los libros desde 1976 encontr[ó] que a los Protocolos correspondientes a los años *1984, 1985, 1986* y *1987* le[s] fueron causado[s] daños consistentes en que le fueron arrancados los sellos en varias escrituras y [les] fueron hurtados y/o destru[i]das cuatro escrituras correspondientes al año 1987." Carta de 23 de agosto de 1990, pág. 1.

El mismo notario desglosó así los daños:

"Protocolo 1984 Tomo 1:

"Le fueron arrancadas la última página a las escrituras número 3, 5, 30, 40, 48 y 54.

"Protocolo 1984 Tomo II:

"Le fueron arrancados los sellos de Rentas Internas a las escrituras número 94.

"Protocolo 1985 Tomo 1:

"Le fueron arrancada[s] la última página a las escrituras número 21, 23 y 49 mientras que a la certificación de la escritura número 22 le fue arrancado el sellos [sic] de rentas internas.

"Protocolo 1985 Tomo IV:

"Le fue arrancada la última página a la escritura número 162.

"Protocolo 1986 Tomo 1:

"Le fueron arrancada[s] la última página a las escrituras número 42 y 49 mientras que a la escritura número 29 y 38 le[s] fueron arrancados los sellos de rentas internas.

"Protocolo 1986 Tomo II:

"Le fueron arrancados los sellos de rentas internas a las escrituras números 54, 56, 57, 62, 98 y 109.

"Protocolo 1986 Tomo III:

"Le fueron arrancados los sellos de rentas internas a las escrituras número 131 y 133.

"Protocolo 1987[:]

"Fueron hurtadas las escrituras número 23 sobre Compraventa Reconociendo y Asumiendo Hipoteca otorgada por GRISEL ROBLES HERNANDEZ, JUSTINO QUIÑONES MOREIRA, CARMEN MILAGROS ROSADO GONZALEZ, Escritura número 48 sobre Cancelación de Hipoteca otorgada por TOMAS RODRIGUEZ HERNANDEZ, ANADELIA GONZALEZ ROSARIO, Escritura número 95 sobre Compraventa otorgada por ANGEL LUIS OLMEDA MEDINA, JOSE CRUZ MORALES, LUZ MARIA FUENTES RAMOS.

"Escritura Número 101 sobre Compraventa otorgada por MANUEL HERRERA MELENDEZ, PEDRO HERRERA MELENDEZ, RAUL PEREZ BENABE.

"Le[s] fueron arrancadas las páginas finales a las escr[i]turas números 21, 54, 73, 80, 96 y 97 a dichas escrituras le fueron tomadas las firmas a los otorgantes nuevamente en la escritura al rehacer la página final.

"Le[s] fueron arrancados los sellos de rentas internas y mutiladas la última página a las siguientes escrituras: 4, 10, 31, 44, 60, 71, 74, 75, 88, 92, 131 y 149." Carta de 23 de agosto de 1990, págs. 1–3.

Además, el notario Ríos Acosta dio cuenta de ello a la Policía. El 21 de agosto de 1990 presentó formalmente la Querella Núm. 90-4-027-2789.

Trasladado el asunto a la consideración del pleno del Tribunal, concedimos al notario Ríos Acosta un término para que mostrara causa por la cual no debieramos disciplinarlo ni, tampoco, exigirle la restructuración, a costo suyo, de aquellos protocolos deteriorados o perdidos por su falta de diligencia.

Oportunamente, éste nos informó de las gestiones realizadas para corregir y restaurar el protocolo, ello bajo la supervisión del licenciado Martínez Surís. *Ese trámite continúa.*

Respecto al ámbito disciplinario, aduce que sus protocolos siempre permanecieron en su "oficina particular dentro y sobre [su] creden[ci]a" (Moción informativa, pág. 2); que fue a raíz de la visita pautada por el inspector Lluberas Kells que se percató de lo sucedido y lo notificó a la Policía; que *"nunca [su] oficina personal estuvo cerrada bajo llave* por motivo de la CONFIANZA, AMISTAD Y COMPAÑERISMO que siempre ha permeado en es[e] lugar", (énfasis suplido) íd.; que fue un empleado de su oficina quien aparentemente "logró acceso a [su] despacho y paulatinamente fue apropiándose de los sellos de rentas internas que obraban en las escrituras de [su] Protocolo" (íd.); que al tener conocimiento de ello, esa persona cesó de trabajar en sus oficinas, y que voluntariamente ha estado reconstruyendo la obra notarial afectada. Finalmente, en su escrito reconoce que no cerraba "su despacho bajo llave mientras [se] encontraba realizando labores fuera de [su] oficina" (íd.); que lo acontecido no ha causado daños a terceras personas, y que es la primera vez que esto le ocurre en sus quince (15) años ejerciendo la notaría.

## II

El Art. 48 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, proclama el principio de que los Protocolos *son* del Estado y que el notario es simplemente su *custodio*:

> Los Protocolos pertenecen al Estado. Los notarios los conservarán con arreglo a lo dispuesto en esta ley, siendo responsables de su integridad. Si se deteriorasen o perdiesen por falta de diligencia, los

repondrán a sus expensas, pudiendo el Tribunal Supremo imponer también a su discreción las sanciones establecidas en la sec. 2102 de este título. Si hubiere motivo para sospechar la comisión de un delito se informará de ello a la autoridad competente para que se tome la acción que corresponda. 4 L.P.R.A. sec. 2072.

El estatuto recoge un principio universal:[2] todo notario es fiel depositario del protocolo y tiene la obligación de. guardarlo celosamente bajo su responsabilidad. A. Neri, *Tratado teórico y práctico de derecho notarial*, Buenos Aires, Eds. Depalma, 1971, T. 4, pág. 90; P. Ávila Álvarez, *Estudios de Derecho Notarial*, Madrid, Ed. Montecorvo, 1973, págs. 307–308. Por ende, si se deterioran por su falta de diligencia, deberá reponerlos o reconstruirlos a sus expensas. P. Malaret Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 127; E. Giménez Arnau, *Derecho Notarial*, Madrid, Ed. Reus, 1954, pág. 28. Esa labor "es sin perjuicio de las medidas disciplinarias". Malaret Vega, *op. cit.*

Neri, en su reputada obra, nos dice:

Esta condición, según la cual el notario es archivero de su propio protocolo, parece inobjetable, puesto que si en su función de dador de fe pública el notario ha de ser pundonoroso, nada más lógico admitir que también ha de serlo en su carácter de guardador. La confianza depositada en el notario por los particulares, cuando requieren su intervención ministerial indispensable para producir efectos jurídicos, no ha de ser menos que la que deposita el propio estado al investirlo de fe pública. Es muy lógico suponer, entonces, que la ley le confíe al propio funcionario la conservación e integridad de las escrituras públicas que él autoriza. Por lo demás, persuadido el notario de la gran responsabilidad que importa esa custodia, es dar por sentado que habrá de emplear los medios para su adecuada conservación. Finalmente, a la par de esta obligación de índole material, cabe aceptar que cumplirá, de modo muy relevante, la de orden moral, por lo mismo que "el primer deber del notario consigo mismo es el sentimiento del decoro profesional, de la propia

---

[2] La derogada Ley Notarial de Puerto Rico de 1957 también lo incorporaba en sus Secs. 34 y 37 (4 L.P.R.A. secs. 1034 y 1037). Véanse: *Inspector de Protocolos v. Dubón*, 107 D.P.R. 50, 62 (1978); *In re Baigés Chapel*, 104 D.P.R. 638, 640 (1976).

dignidad y de la importancia de su ministerio". (Escolios omitidos.) Neri, *op. cit.*, págs. 90–95.

## III

Aquí el notario Ríos Acosta evidentemente no actuó con la rigurosidad requerida para la adecuada custodia y conservación de su obra notarial. La confianza depositada en el personal de su oficina no lo exime de dicha responsabilidad.

En atención a su buen historial previo como notario, su conducta amerita, como sanción disciplinaria, su separación temporal de la notaría por tres (3) meses.

*Se dictará la correspondiente sentencia.*