En el Tribunal Supremo de Puerto Rico

| In re: | Querella |
|---|---|
| Nelson E. Sánchez Quijano | 99 TSPR 88 |

Número del Caso: TS-6655

Abogado de la Parte Querellante: Lcda. Carmen H. Carlos, Directora Oficina de Inspección de Notarías

Abogado de la Parte Querellada: Por Derecho Propio

Fecha: 6/7/1999

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Nelson E. Sánchez Quijano          TS-6655

PER CURIAM

San Juan, Puerto Rico, a 7 de junio de 1999

I

El 2 de febrero de 1998, el Lcdo. Nelson E. Sánchez Quijano –admitido a la abogacía y notaría el 7 y 21 de noviembre de 1979, respectivamente–, acordó con el Inspector de Protocolos, Lcdo. Nelson Colón Román, la inspección de su obra notarial el 6 de febrero. Informó que sus protocolos se encontraban en la Calle Gilberto Monroig, Núm. 2074, Santurce; dirección distinta a la reflejada en su expediente, Calle Núm. 5 B-34, Urb. Villas de Castro, Caguas.

El día acordado, al llegar el Inspector Colón Román, lo atendió una persona de nombre Francisco Cabrera, quién aparentaba pernoctar en el lugar.  Le

indicó que el dueño, señor "Puebla", operaba allí un taller de reparación de máquinas de imprentas. Había sucio, desorden y falta de seguridad.

El Inspector Colón Román, al ver la obra notarial abandonada, deteriorada y accesible a extraños, previa autorización de la Directora, Lcda. Carmen H. Carlos[1] y, a tenor con el procedimiento extraordinario de inspección visualizado en la Regla 78 del Reglamento Notarial,[2] la incautó y trasladó a las Oficinas de Inspección de Notarías.

Realizada oportunamente la correspondiente inspección, los informes rendidos por la Oficina de Inspección de Notarías el 18 de febrero y el 27 de marzo, reflejan que la obra adolece de serias deficiencias en contravención a la Ley Notarial y otros preceptos legales. Entre ellas, falta la firma del notario en las Escrituras Núms. 9 y 12 del protocolo de 1992; se omiten iniciales de comparecientes en el último folio de la Escritura Núm. 12A del Protocolo 1992 y la Escritura Núm. 17 del protocolo de 1993; autorización de Escritura Núm. 1 del protocolo de 1993 sobre Revocación de Testamento, sin comparecencia de testigos; en los protocolos de 1992 y 1993, no se indicaron notas de saca de ninguna de

---

[1] Logró incautarse de los protocolos correspondientes a los años 1979, 1980, 1981, 1982, 1983, 1984, 1985, 1987, 1988, 1989, 1990, 1991, 1992 y 1993, más cinco (5) tomos de Registro de Testimonios. Según su expediente, el Lcdo. Sánchez Quijano realizó obra notarial los años 1986, 1994, 1996 y 1997. Estos, sin embargo, no se encontraban visibles al momento de la incautación.

[2] Provee la inspección inmediata en "cualesquiera casos que presenten circunstancias extraordinarias, **particularmente aquellos en que esté en riesgo la integridad de un protocolo**. T. 4 Ap. XXIV R. 78.

las escrituras ni el nombre de las personas con legítimo interés en su expedición; no se consignaron los documentos utilizados para identificar comparecientes en varias escrituras; ni se cancelaron numerosos sellos notariales. Sobre los Registros de Testimonios, el último tomo de **304 páginas**, revela que no se inscribió testimonio alguno desde el 26 de febrero de 1997 –fecha en que se inscribió el Testimonio Núm. 7258 en la **pág. 234**– siendo nulos todos los autorizados posteriormente.

El 17 de marzo de 1999, la Directora nos sometió Informe Suplementario, con nuevos hallazgos producto de la inspección de los protocolos de los años 1986, 1994 y 1995 e informándonos la falta de cumplimiento del Lcdo. Sánchez Quijano a nuestras órdenes.[3] Entre las nuevas deficiencias destacamos: falta de firmas de otorgantes y el notario; omisión de iniciales y expresión de los métodos utilizados

---

[3] El 29 de junio, ordenamos al Lcdo. Sánchez Quijano que en cinco (5) días pusiera a disposición de la Oficina de Inspección de Notarías el resto de la obra notarial para su correspondiente inspección. Además, le instruimos subsanar dentro de treinta (30) días las deficiencias encontradas a la obra inspeccionada. Posteriormente, el 17 de julio, previa solicitud de prórroga del notario, le concedimos hasta el 24 de julio de 1998 para entregar su obra y hasta el 10 de agosto para contestar Informe de la Oficina de Inspección de Notarías.

El 4 de septiembre ordenamos al alguacil incautar el remanente de la obra notarial del Lcdo. Sánchez Quijano y le ordenamos a éste mostrar causa por la cual no debía ser disciplinado dentro de treinta (30) días. El 18 de diciembre, nuevamente concedimos término de sesenta (60) días para que el Lcdo. Sánchez Quijano entregara el resto de su obra, so pena de ser suspendido temporeramente de la abogacía.

para identificar otorgantes. Adeuda en **sellos notariales sin cancelar, aproximadamente $6,300.00.**

II

El Art. 48 de nuestra Ley Notarial proclama el principio de que los protocolos pertenecen al Estado y que el Notario es simplemente su custodio. Como su fiel depositario, tiene que guardarlo celosa y responsablemente. 4 L.P.R.A. 2072. In re: Ríos Acosta, 128 D.P.R. 412 (1991). Corolario de este principio, el Art. 53 prohibe la remoción de la obra notarial de la oficina que se custodie, a menos que haya decreto judicial a esos fines o medie autorización de la Oficina de Inspección de Notarías. 4 L.P.R.A. 2077. In re: Prieto Ferrer, res. en 20 de noviembre de 1998; In re: Vargas Pérez, res. en 26 de marzo de 1998; In re: Ríos Acosta, supra.

El Lcdo. Sánchez Quijano transgredió crasamente estas normas de incuestionable valor. Trasladó **sin autorización** su obra notarial a un lugar cuyas condiciones atentaba contra su seguridad e integridad. De hecho, alcanzaron tal nivel de deterioro, que el inspector se vio precisado a incautarla inmediatamente.

Incurrió además el Lcdo. Sánchez Quijano en otra violación a los principios más elementales de la buena práctica de la notaría: **no haber cancelado los sellos notariales correspondientes al autorizar o certificar un instrumento público.** Según los informes de la Oficina de Inspección de Notarías, la deuda por este concepto asciende a $6,300.00. Reiteramos que dejar de adherir y cancelar los sellos al autorizar los documentos públicos es una falta

grave, sujeta a serias sanciones y acciones disciplinarias, sin menoscabo de la responsabilidad legal del notario. Podría configurar además, el delito de apropiación ilegal. In re: Rivera Rivera, res. en 30 de junio de 1998; In re: Casiano Silva, res. en 17 de abril de 1998; In re: Nieves Ortiz, res. en 2 de marzo de 1998; In re: Madera Acosta, res. en 4 de febrero de 1998; In re: Casasnovas Luiggi, res. en 10 de enero de 1997; In re: Colón Muñoz, res. en 30 de junio de 1992; In re: Merino Quiñones, 115 D.P.R. 812 (1984).

En relación a la falta de firma del notario e iniciales de comparecientes en varias escrituras, sabido es que constituye una omisión que conlleva severas sanciones disciplinarias. In re: Torres Olmeda, res. en 23 de abril de 1998; In re: Vélez González, res. en 16 de marzo de 1995. Por otra parte, la incomparecencia de testigos en la autorización de escritura de revocación de testamento también merece nuestro más enérgico repudio, pues no sólo contraviene disposiciones legales y reglamentarias, sino que pone en entredicho la validez del negocio jurídico. De igual forma, no indicar notas de sacas de escrituras, omitir los nombres de las personas con legítimo interés en la expedición, así como dejar de consignar el documento utilizado para identificar comparecientes en varias escrituras, son faltas demostrativas de un patrón repetitivo que revela una pobre e intolerable práctica notarial. In re: Medina Lugo, res. en 16 de mayo de 1994; In re: Vargas Hernández, res. en 30 de marzo de 1994; In re: Pedraza González, res. en 23 de noviembre de 1992; Ramírez v. Registrador, res. en 30 de junio de 1992.

III

Finalmente, como agravante, el Lcdo. Sánchez Quijano, además de no presentarse al lugar y hora acordada para realizar la  inspección de su obra notarial, hizo caso omiso a los acercamientos realizados por la Oficina de Inspección de Notarías, y a nuestras órdenes y apercibimientos, conducta que reiteradamente hemos deplorado por constituir desafío a la facultad supervisora de la Oficina de Inspección de Notarías y nuestra autoridad disciplinaria. In re: Guemárez Santiago, res. en 30 de junio de 1998; In re: Jusino López, res. en 13 de marzo de 1998; In re: Melecio Morales, res. en 13 de febrero de 1998; In re: Manzano Velázquez, res. en 7 de noviembre de 1997; In re: Miranda Morales, res. en 5 de mayo de 1997; In re: Villanueva Laguer, res. en 21 de febrero de 1997; In re: Sepúlveda Negroni, res. en 25 de octubre de 1996; In re: Rivera Rivera, res. en 20 de junio de 1996; In re: Pérez Benabe, res. en 19 de mayo de 1993; In re: Nicot Santana, res. en 24 de enero de 1992.

En resumen, estamos ante una práctica notarial patentemente descuidada, violatoria de innumerables exigencias de nuestra Ley Notarial y su Reglamento, y una falta a la confianza pública. Pone de manifiesto una conducta contraria a las leyes, temeraria y desafiante a la facultad supervisora de la Oficina de Inspección de Notarías y nuestra autoridad disciplinaria.

Éstas, unidas a la magnitud de las deficiencias nos obliga, como único curso de acción, a suspender inmediatamente -efectivo al momento de ser notificado- al

Lcdo. Sánchez Quijano de la abogacía y notaría indefinidamente.

Se dictará la correspondiente Sentencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Nelson E. Sánchez Quijano                 TS-6655

SENTENCIA

San Juan, Puerto Rico, a 7 de junio de 1999

Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia suspendiendo inmediatamente – efectivo al momento de ser notificado– al Lcdo. Nelson E. Sánchez Quijano de la abogacía y notaría indefinidamente.

Se ordena a la Oficina del Alguacil que se incaute de su obra notarial, incluso sello notarial, para ser remitida, examinada y oportunamente objeto de un Informe por parte de la Oficina de Inspección de Notarías.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo