*In re* PENNY LÓPEZ CORDERO.

*Número:* TS-8175          *Resuelto:* 29 de abril de 2005

---

■

*Carmen H. Carlos*, directora de la Oficina de Inspección de Notarías; *Penny López Cordero*, abogada querellada.

PER CURIAM:

I

La Sra. Penny López Cordero fue admitida al ejercicio de la abogacía el 10 de enero de 1986 y al ejercicio del notariado el 24 de enero del mismo año. A finales de 1999, la licenciada López Cordero dirigió una misiva al entonces Juez Presidente, Hon. José A. Andréu García, para informarle que se le habían extraviado los Protocolos de su obra notarial correspondientes a 1993 y 1995. Mediante Resolución de 9 de febrero de 2000, concedimos a la mencionada notario tres meses para que, en coordinación con la Directora de la Oficina de Inspección de Notarías, reconstruyera los referidos Protocolos. Posteriormente, la licenciada López Cordero solicitó una prórroga para completar la reconstrucción de sus Protocolos, por lo cual concedimos un término adicional de sesenta días para culminar con ese procedimiento.

En enero de 2002, solicitamos a la Directora de la Oficina de Inspección de Notarías que nos informara si la licenciada López Cordero había culminado con la reconstrucción ordenada. En respuesta a lo solicitado, de la mencionada oficina nos indicaron que la referida notario no había terminado con el procedimiento de reconstrucción de Protocolos. Asimismo, añadieron que se habían descubierto serias deficiencias en la obra notarial de la licenciada López Cordero desde 1988 hasta 1992, entre ellas, la ausencia de consignación en varios testamentos abiertos en que los testigos conocían al testador; expresión incom-

pleta de las circunstancias personales de los comparecientes, y falta de las iniciales y de la firma de uno de los otorgantes. La licenciada López Cordero aceptó estos hallazgos.

Mediante Resolución de 18 de octubre de 2002, apercibimos a la licenciada López Cordero sobre la seriedad y gravedad de los procedimientos pendientes, lo cual requería su atención inmediata a los señalamientos de la Directora de la Oficina de Inspección de Notarías.

A principios de 2005, la Directora de la Oficina de Inspección de Notarías compareció ante nos mediante la presentación de un Informe Suplementario. En él esbozó los trámites que llevó a cabo la referida oficina para evaluar la labor notarial de la licenciada López Cordero en cuanto a los señalamientos previos de deficiencias notariales y respecto a la reconstrucción de los Protocolos extraviados. En cuanto a esto último, esa oficina señaló que no se había logrado la reconstrucción y que, según las expresiones de la licenciada López Cordero, no se podrá cumplir con esto. Sobre las deficiencias notariales, informó que muy pocas habían sido corregidas o subsanadas. Concluyó el informe con una relación de las serias deficiencias notariales descubiertas en los Protocolos de la referida notario desde 1998 hasta el 2001, entre las cuales se encuentran la comparecencia como testigos de los hermanos del testador, no hacer constar la hora del otorgamiento del testamento y la expresión incompleta de las circunstancias personales de comparecientes o testigos.

Así las cosas, concedimos un término a la licenciada López Cordero para que expresara su posición respecto al referido Informe Suplementario y mostrara causa por la cual no debía ser suspendida del ejercicio de la profesión. Ésta compareció y, aunque acepta en su mayoría el contenido del mencionado informe, aduce que no ha podido reconstruir los Protocolos extraviados debido a la muerte o desconocimiento del paradero de comparecientes o testigos. En cuanto a la falta de corrección de las deficiencias nota-

riales, alega que algunas han sido subsanadas y las demás no han producido daños a las partes involucradas o que, según las circunstancias actuales, no resulta necesaria su corrección.

Estando en posición de evaluar el desempeño notarial de la licenciada López Cordero, procedemos.

## II

A. La Ley Notarial de Puerto Rico define al notario como aquel

> ... profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen ....[1] Véanse: *In re González Maldonado*, 152 D.P.R. 871 (2000); *In re Jiménez Brackel*, 148 D.P.R. 287 (1999).

El notario es el guardián de la fe pública. Su función fundamental es asegurar que el documento que otorga cumple con todas los requisitos de ley, tanto formales como sustantivos; que ese documento es legal y verdadero, y que recoge una transacción válida y legítima. *In re Rivera Arvelo y Ortiz Velázquez*, 132 D.P.R. 840 (1993); *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986).

Reiteradamente hemos expresado que la notaría es una función de cuidado que se debe ejercer con sumo esmero, diligencia y celo profesional. *In re Amundaray Rivera*, 163 D.P.R. 251 (2004); *In re Vera Vélez*, 148 D.P.R. 1 (1999). Ello implica que el notario está obligado a observar rigurosamente la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2001 *et seq.* —y su reglamento— los cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y el contrato entre las partes. *In re Aponte Berdecía*, 161 D.P.R. 94 (2004); *In re González Maldonado*, supra. El incumpli-

---

[1] Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2002.

miento con alguna de estas disposiciones constituye una violación a las normas éticas que rigen la profesión legal y sujeta al notario a la acción disciplinaria correspondiente. *In re Amundaray Rivera*, supra; *In re Vera Vélez*, supra; *In re Rodríguez Báez*, 129 D.P.R. 819 (1992). Particularmente, hemos expresado que constituye una violación al Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX,[2] cuando el notario otorga un documento notarial en violación de la Ley Notarial de Puerto Rico. *In re Torres Olmeda*, 145 D.P.R. 384 (1998).

■ La exaltación de la función notarial a los confines de la excelencia profesional se debe a que, por un lado, "[l]a fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo esquema de autenticidad documental". *In re Montañez Miranda*, 157 D.P.R. 275, 282 (2002). Véase *In re Vargas Hernández*, 135 D.P.R. 603 (1994). Por el otro lado, la validez y autenticidad de un instrumento público dependen esencialmente de que el notario observe con escrúpulo —y ejecute con cautela— los requisitos y las formalidades que impone la Ley Notarial de Puerto Rico. *In re González Maldonado*, supra.

■ B. De otra parte, el Protocolo de un notario es la colección ordenada de las escrituras matrices y actas que autoriza durante un año natural. Art. 47 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2071. Por disposición expresa de ley, los Protocolos pertenecen al Estado. Art. 48 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2072. El notario es simplemente su custodio, encargado de guardarlos celosa y responsablemente para que no se pierdan o deterioren. *In re González Maldonado*, supra; *In re Sánchez Quijano*, 148 D.P.R. 509 (1999). "[L]a custodia y conservación de los protocolos es de vital importancia para la

---

[2] Este canon exige de los abogados que se esfuercen al máximo de su capacidad en la exaltación del honor y la dignidad de su profesión.

secretividad [sic], protección e integridad de los mismos." *In re Algarín Otero*, 117 D.P.R. 365, 369–370 (1986). Es por ello que el notario, aun cuando posee la tenencia física temporera de los Protocolos, no posee la autoridad de disponer de ellos a su antojo o conveniencia; necesita una autorización de la Oficina de Inspección de Notarías o un decreto judicial para poder extraerlos de la oficina en la cual los custodia. Art. 53 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2077; *In re Sánchez Quijano*, supra.

■ La importancia que reviste esta función notarial descansa en lo siguiente:

> La finalidad del protocolo es la de preservar la eficacia probatoria del instrumento público frente a los riesgos que conlleva la posible pérdida de sus copias por los interesados. Mediante la conservación de las escrituras matrices en el [P]rotocolo, los instrumentos públicos adquieren mayor durabilidad y permanencia. Por la naturaleza de los instrumentos públicos así preservados y la posibilidad de que afecten a terceros, como es usual y corriente, se considera aconsejable que los conserve el representante del Estado que los autorizó. S. Torres Peralta, *El Derecho Notarial Puertorriqueño*, San Juan, Ed. Publicaciones STP, ed. especial 1995, pág. 14.1.

■ Así, pues, resulta en una función inherente a la del otorgamiento correcto de los instrumentos públicos, el celoso resguardo que efectúe el notario autorizante, sin que esta función sea inferior a la propia autorización del documento público. "[S]i en su función de dador de fe pública el notario ha de ser pundonoroso, nada más lógico admitir que también ha de serlo en su carácter de guardador". *In re Antonio Ríos Acosta*, 128 D.P.R. 412, 415 (1991), citando a A. Neri, *Tratado teórico y práctico de derecho notarial*, Buenos Aires, Eds. Depalma, 1971, T. 4, pág. 90.

■ Como custodio, el notario será responsable del deterioro o la pérdida de los Protocolos por falta de diligencia. Si esto ocurre, tiene la obligación de reponerlos o restau-

rarlos a sus expensas. Art. 48 de la Ley Notarial de Puerto Rico, *supra*; *In re González Maldonado*, supra. Ahora bien, lo anterior no es óbice para que este Tribunal imponga al notario unas sanciones o medidas disciplinarias adecuadas. Íd.; *In re Antonio Ríos Acosta*, supra.

■ En casos de pérdida o destrucción de Protocolos, el Art. 55 de la Ley Notarial de Puerto Rico dispone de un mecanismo para reconstruirlos:

> En caso de inutilizarse o perderse el todo o parte de un [P]rotocolo[,] el notario dará cuenta al Juez Presidente del Tribunal Supremo, quien ordenará reconstruir, con citación de partes, el oportuno expediente. Se cotejarán los índices y libros y examinará cuantos antecedentes fueren necesarios, procurando que se reponga en lo posible lo que se haya inutilizado o destruido. El Tribunal Supremo, a recomendación del Director de la Oficina de Inspección de Notarías[,] aprobará el expediente. 4 L.P.R.A. sec. 2079.

■ Al utilizar este mecanismo, el notario debe obrar con diligencia y probado esfuerzo, ya que de su gestión dependerán terceras personas que confiaron en él para preservar diversos negocios jurídicos. Sencillamente, el notario debe desplegar el mismo celo, esmero y dedicación que se le exige para la ejecución de las demás funciones notariales al momento de reconstruir Protocolos extraviados o inutilizados.

Visto este marco normativo, veamos su aplicación a los hechos del caso ante nos.

### III

La licenciada López Cordero notificó a este Tribunal la pérdida de sus Protocolos de 1993 y 1995 en diciembre de 1999. En febrero del año siguiente le concedimos un término de tres meses para que iniciara y completara la reconstrucción de sus Protocolos. Mediante resolución emitida en octubre de 2000, concedimos a la licenciada López

Cordero un término adicional de sesenta días para completar la reconstrucción del Protocolo, según nos lo solicitó. Posteriormente, en enero de 2001, la licenciada López Cordero comunicó a este Tribunal la escabrosa tarea que le había resultado reproducir ciertas escrituras, por lo que solicitó una prórroga del ya vencido término para culminar la reconstrucción de los Protocolos.

Así las cosas, a mediados de 2002, la Directora de la Oficina de Inspección de Notarías nos informó que la licenciada López Cordero aún no había cumplido con el procedimiento de reconstrucción de sus Protocolos. La Directora de la Oficina de Inspección de Notarías reiteró este hecho en el Informe Suplementario presentado ante nos a principios de 2005. En este último, la referida directora concluyó que la licenciada López Cordero no había desplegado las diligencias necesarias para concluir la reconstrucción de los Protocolos de 1993 y 1995.

El reseñado trasfondo procesal es suficiente evidencia para concluir que la licenciada López Cordero no ejerció con celo profesional y esmerada dedicación su función notarial de reconstrucción de Protocolos extraviados. A pesar de que han trascurrido más de cinco años desde que la referida notario nos comunicó la pérdida de sus Protocolos y de las periódicas visitas de los inspectores de la Directora de la Oficina de Inspección de Notarías a la oficina de la licenciada López Cordero, ésta no ha completado el proceso de reconstrucción.

El anterior cuadro fáctico se agrava ante las serias deficiencias descubiertas en las escrituras de los Protocolos de la licenciada López Cordero desde 1988 hasta 1992, y de 1998 a 2001, deficiencias que aceptó la propia notario y que un número considerable de ellas no han sido corregidas o subsanadas.

Entendemos que la función notarial desempeñada por la licenciada López Cordero habla por sí sola. No refleja la pulcritud, la dedicación y el puntilloso cumplimiento con la

Ley Notarial de Puerto Rico, elementos esenciales para la validez y el efecto de la obra notarial. Además, la falta de diligencia en la pérdida y reconstrucción de los Protocolos denota cierto desconocimiento de lo que implica la función de custodia inherente al notariado.

## IV

En vista de lo anterior, *decretamos la suspensión inmediata e indefinida de la Lcda. Penny López Cordero del ejercicio de la notaría, a partir de la notificación de esta opinión "per curiam" y hasta que otra cosa disponga este Tribunal. Le imponemos, además, el deber de notificar a todos sus clientes de su presente inhabilidad para seguir actuando como notario público, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión como notario público a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta días a partir de su notificación, el cumplimiento de estos deberes. La oficina del Alguacil de este Tribunal procederá a incautarse del sello y la obra notarial de la Lic. Penny López Cordero, y los entregará a la Oficina de Inspección de Notarías para su examen e informe a este Tribunal.*

*Se dictará la Sentencia correspondiente.*

El Juez Asociado Señor Rebollo López no intervino. La Jueza Asociada Señora Rodríguez Rodríguez no interviene.