EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                  |                |
|                         | 2005 TSPR 64   |
|     Penny López Cordero |                |
|                         | 163 DPR \_\_\_\_ |

Número del Caso: TS-8175


Fecha: 29 de abril de 2005


Abogada de la Parte Peticionaria:

                        Por Derecho Propio

 Oficina de Inspección de Notarías:

                        Lcda. Carmen H. Carlos
                        Directora




Materia: Conducta Profesional
         (La suspensión será efectiva el 6 de mayo de 2005 fecha
         en que se le notificó a la abogada de su suspensión
         inmediata.)




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

  Penny López Cordero            TS-8175

PER CURIAM

San Juan, Puerto Rico, a 29 de abril de 2005.

I

La Sra. Penny López Cordero fue admitida al ejercicio de la abogacía el 10 de enero de 1986 y al ejercicio del notariado el 24 de enero del mismo año. A finales del 1999, la Lcda. López Cordero dirigió una misiva al entonces Juez Presidente, Hon. José A. Andréu García, informándole que se le habían extraviado los protocolos de su obra notarial correspondientes a los años 1993 y 1995. Mediante Resolución de 9 de febrero de 2000, concedimos a la mencionada notario tres (3) meses para que, en coordinación con la Oficina de la Directora de Inspección de Notarías, reconstruyera los referidos

protocolos. Posteriormente, la Lcda. López Cordero solicitó prórroga para completar la reconstrucción de sus protocolos, por lo cual concedimos un término adicional de sesenta (60) días para culminar con dicho procedimiento.

En enero de 2002, solicitamos a la Oficina de la Directora de Inspección de Notarías que nos informara si la Lcda. López Cordero había culminado con la reconstrucción ordenada. En respuesta a lo solicitado, la mencionada oficina nos indicó que la referida notario no había terminado con el procedimiento de reconstrucción de protocolos. Asimismo, añadió que se habían descubierto serias deficiencias en la obra notarial de la Lcda. López Cordero para los años 1988 a 1992, entre ellas, la ausencia de consignación en varios testamentos abiertos de que los testigos conocían al testador; expresión incompleta de las circunstancias personales de los comparecientes; y falta de iniciales y firma de uno de los otorgantes. Estos hallazgos fueron aceptados por la Lcda. López Cordero.

Mediante Resolución de 18 de octubre de 2002, apercibimos a la Lcda. López Cordero sobre la seriedad y gravedad de los procedimientos pendientes, lo cual requería su atención inmediata a los señalamientos de la Oficina de la Directora de Inspección de Notarías.

A principios del año 2005, la Oficina de la Directora de Inspección de Notarías compareció ante nos mediante la presentación de un Informe Suplementario. En el mismo esbozó los trámites llevados a cabo por la referida oficina para

evaluar la labor notarial de la Lcda. López Cordero en cuanto a los previos señalamientos de deficiencias notariales y respecto a la reconstrucción de los protocolos extraviados. En cuanto a esto último, dicha oficina señaló que no se había logrado la reconstrucción y que, según las expresiones de la Lcda. López Cordero, no se podrá cumplir con la misma. Sobre las deficiencias notariales, informó que muy pocas habían sido corregidas o subsanadas. Concluyó dicho informe con una relación de las serias deficiencias notariales descubiertas en los protocolos de la referida notario para los años 1998 a 2001, entre las cuales se encuentran la comparecencia como testigos de los hermanos del testador; no hacer constar la hora del otorgamiento del testamento; y la expresión incompleta de las circunstancias personales de comparecientes o testigos.

Así las cosas, concedimos término a la Lcda. López Cordero para que expresara su posición respecto al referido Informe Suplementario y mostrara causa por la cual no debía ser suspendida del ejercicio de la profesión. Ésta compareció y, aunque acepta en su mayoría el contenido del mencionado informe, aduce que no ha podido reconstruir los protocolos extraviados debido a la muerte o desconocimiento del paradero de comparecientes o testigos. En cuanto a la falta de corrección de las deficiencias notariales, alega que algunas han sido subsanadas y las demás no han producido daños a las partes involucradas, o que según las circunstancias actuales no resulta necesaria su corrección.

Estando en posición de evaluar el desempeño notarial de la Lcda. López Cordero, procedemos.

II

A

Se define al notario como aquel "profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen...".[1] El notario es el guardián de la fe pública. In re: González Maldonado, 152 DPR 871 (2000); In re: Jiménez Brackel, 148 D.P.R. 287 (1999). Su función fundamental es asegurar que el documento que otorga cumple con todas las formalidades de ley, tanto formales como sustantivas; que ese documento es legal y verdadero; y que el mismo recoge una transacción válida y legítima. In re: Rivera Alvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993); In re: Feliciano Ruiz, 117 D.P.R. 269 (1986).

Reiteradamente, hemos expresado que la notaría es una función de cuidado que debe ser ejercida con sumo esmero, diligencia y celo profesional. In re: Amundaray Rivera, res. el 12 de noviembre de 2004, 2004 TSPR 191; In re: Vera Vélez, 148 D.P.R. 1 (1999). Ello implica que el notario está obligado a observar rigurosamente la Ley Notarial, 4 L.P.R.A. secs. 2001 *et seq.* --y su reglamento--, los Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX, y el contrato entre las partes. In re: Aponte Berdecía, res. el

---

[1] Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2002.

22 de enero de 2004, 2004 TSPR 24; *In re: González Maldonado, supra*. El incumplimiento con alguna de estas disposiciones constituye una violación a las normas éticas que rigen la profesión legal y sujeta al notario a la acción disciplinaria correspondiente. *In re: Amundaray Rivera, supra*; *In re: Vera Vélez*, 148 D.P.R. 1 (1999); *In re: Rodríguez Báez*, 129 D.P.R. 819 (1992). Particularmente, hemos expresado que constituye una violación al Canon 38 del Código de Ética Profesional, *supra*,[2] cuando el notario otorga un documento notarial en violación de la Ley Notarial de Puerto Rico. *In re: Torres Olmeda*, 145 D.P.R. 384 (1998).

La exaltación de la función notarial a los confines de la excelencia profesional se debe a que, por un lado, "la fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo esquema de autenticidad documental". *In re: Montañez Miranda*, res. 18 de junio de 2002, 2002 TSPR 122; *In re: Vargas Hernández*, 135 D.P.R. 603 (1994). Por el otro lado, la validez y autenticidad de un instrumento público dependen esencialmente de que el notario observe con escrúpulo --y ejecute con cautela-- los requisitos y formalidades impuestos por la Ley Notarial, *supra*. *In re: González Maldonado, supra*.

---

[2] Este canon exige de los abogados que se esfuercen al máximo de su capacidad en la exaltación del honor y la dignidad de su profesión.

B

De otra parte, el protocolo de un notario es la colección ordenada de las escrituras matrices y actas que éste autoriza durante un año natural. Art. 47 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2071. Por disposición expresa de ley, los protocolos pertenecen al Estado. Art. 48 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2072. El notario es simplemente su custodio, encargado de guardarlos celosa y responsablemente para que no se pierdan y/o deterioren. In re: González Maldonado, supra; In re: Sánchez Quijano, 148 D.P.R. 508 (1999). "[L]a custodia y conservación de los protocolos es de vital importancia para la secretividad [sic], protección e integridad de los mismos". In re: Algarín Otero, 117 D.P.R. 365, 369-370 (1986). Es por ello que el notario, aun cuando posee la tenencia física temporera de los protocolos, no posee la autoridad de disponer de ellos a su antojo o conveniencia, necesitando autorización de la Oficina de Inspección de Notarías o decreto judicial para poder extraerlos de la oficina en la cual los custodia. Art. 53 de la Ley Notarial, 4 L.P.R.A. sec. 2077; In re: Sánchez Quijano, supra.

La importancia que reviste esta función notarial descansa en lo siguiente:

> La finalidad del protocolo es la de preservar la eficacia probatoria del instrumento público frente a los riesgos que conlleva la posible pérdida de sus copias por los interesados. Mediante la conservación de las escrituras matrices en el protocolo, los instrumentos

públicos adquieren mayor durabilidad y permanencia. Por la naturaleza de los instrumentos públicos así preservados y la posibilidad de que afecten a terceros, como es usual y corriente, se considera aconsejable que los conserve el representante del Estado que los autorizó. S. Torres Peralta, *El Derecho Notarial Puertorriqueño*, Ed. Publicaciones STP, Inc., San Juan, 1995, pág. 14.1.

Así pues, resulta en una función inherente a la del otorgamiento correcto de los instrumentos públicos, el celoso resguardo de los mismos por el notario autorizante, sin que se entienda esta función como una inferior a la propia autorización del documento público. "[S]i en su función de dador de fe pública el notario ha de ser pundonoroso, nada más lógico admitir que también ha de serlo en su carácter de guardador". In re: Ríos Acosta, 128 D.P.R. 412, 415 (1991) *citando a* A. Neri, *Tratado teórico y práctico de derecho notarial*, Buenos Aires, Ed. Depalma, 1971, T. 4, pág. 90.

Como custodio, el notario será responsable del deterioro o la pérdida de los protocolos por falta de diligencia, teniendo éste la obligación de reponerlos o restaurarlos a sus expensas. Art. 48 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2072; In re: González Maldonado, *supra*. Ahora bien, lo anterior no es óbice para que este Tribunal imponga al notario las sanciones o medidas disciplinarias adecuadas. *Id.*; In re: Ríos Acosta, *supra*.

En casos de pérdida o destrucción de protocolos, el art. 55 de la Ley Notarial dispone de un mecanismo para reconstruirlos. Dicha disposición reza:

En caso de inutilizarse o perderse el todo o parte de un protocolo el notario dará cuenta al Juez Presidente del Tribunal Supremo, quien ordenará reconstruir, con citación de partes, el oportuno expediente. Se cotejarán los índices y libros y examinará cuantos antecedentes fueren necesarios, procurando que se reponga en lo posible lo que se haya inutilizado o destruido. El Tribunal Supremo, a recomendación del Director de la Oficina de Inspección de Notarías aprobará el expediente. 4 L.P.R.A. sec. 2079.

Al utilizar este mecanismo, el notario debe obrar con diligencia y probado esfuerzo, toda vez que de su gestión dependerán terceras personas que confiaron en dicho abogado para preservar diversos negocios jurídicos. Sencillamente, el notario debe desplegar el mismo celo, esmero y dedicación que se le exige para la ejecución de las demás funciones notariales al momento de reconstruir protocolos extraviados o inutilizados.

Visto este marco normativo, veamos su aplicación a los hechos del caso ante nos.

III

La Lcda. López Cordero notificó a este Tribunal la pérdida de sus protocolos para los años 1993 y 1995 en diciembre de 1999. En febrero del año siguiente, concedimos a la mencionada notario un término de tres (3) meses para que iniciara y completara la reconstrucción de sus protocolos. Mediante resolución emitida en octubre de 2000, concedimos a la Lcda. López Cordero un término adicional de sesenta (60) días para completar la reconstrucción del protocolo, según nos lo solicitó. Posteriormente, en enero de 2001, la Lcda. López Cordero comunicó a este Tribunal la

escabrosa tarea que le había resultado el reproducir ciertas escrituras, por lo que solicitó prórroga del ya vencido término para culminar la reconstrucción de los protocolos.

Así las cosas, a mediados del año 2002, la Oficina de la Directora de Inspección de Notarías nos informó que la Lcda. López Cordero aún no había cumplido con el procedimiento de reconstrucción de sus protocolos. Este hecho fue reiterado por la Oficina de la Directora de Inspección de Notarías en el Informe Suplementario presentado ante nos a principios del año 2005. En este último, la referida oficina concluyó que la Lcda. López Cordero no había desplegado las diligencias necesarias para concluir la reconstrucción de los protocolos de 1993 y 1995.

El reseñado trasfondo procesal es suficiente evidencia para concluir que la Lcda. López Cordero no ejerció con celo profesional y esmerada dedicación su función notarial de reconstrucción de protocolos extraviados. A pesar de que han trascurrido más de cinco (5) años desde que la referida notario nos comunicó la pérdida de sus protocolos, y de las periódicas visitas de los inspectores de la Oficina de la Directora de Inspección de Notarías a la oficina de la Lcda. López Cordero, ésta no ha completado el proceso de reconstrucción de los mismos.

El anterior cuadro fáctico se agrava ante las serias deficiencias descubiertas en las escrituras de los protocolos de la Lcda. López Cordero para los años 1988 a 1992 y 1998 a 2001, deficiencias que fueron aceptadas por la

propia notario y que no han sido corregidas o subsanadas, en un número considerable de ellas.

Entendemos que la función notarial desempeñada por la Lcda. López Cordero habla por sí sola. La misma no refleja la pulcritud, la dedicación y el puntilloso cumplimiento con la Ley Notarial, elementos esenciales para la validez y el efecto de la obra notarial. Además, la falta de diligencia en la pérdida y reconstrucción de los protocolos denota cierto desconocimiento de lo que implica la función de custodia inherente al notariado.

## IV

En vista de lo anterior, decretamos la suspensión inmediata e indefinida de la Lcda. Penny López Cordero del ejercicio de la notaría, a partir de la notificación de esta Opinión *Per Curiam* y hasta que otra cosa disponga este Tribunal. Le imponemos a ésta el deber de notificar a todos sus clientes de su presente inhabilidad de seguir actuando como notario público, devolver cualesquiera honorarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión como notario público a los distintos foros judiciales y administrativos del País. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes.

La oficina del Alguacil de este Tribunal procederá a incautarse del sello y la obra notarial de la Sra. Penny

López Cordero, y la entregará a la Oficina de Inspección de Notarías para su examen e informe a este Tribunal.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Penny López Cordero                    TS-8175

SENTENCIA

San Juan, Puerto Rico, a 29 de abril de 2005.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia decretando la suspensión inmediata e indefinida de Penny López Cordero del ejercicio de la notaría, a partir de la notificación de esta Opinión *Per Curiam* y hasta que otra cosa disponga este Tribunal. Le imponemos a ésta el deber de notificar a todos sus clientes de su presente inhabilidad de seguir actuando como notario público, devolver cualesquiera honorarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión como notario público a los distintos foros judiciales y administrativos del País. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes.

El Alguacil de este Tribunal se incautará de inmediato del sello y la obra notarial de Penny López Cordero, y la entregará a la Directora de la Oficina de Inspección de Notarías para su examen e informe a este Tribunal.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino. La Jueza Asociada señora Rodríguez Rodríguez no interviene.


                                    Aida Ileana Oquendo Graulau
                                    Secretaria del Tribunal Supremo