AB-96-81                                                    1

En el Tribunal Supremo de Puerto Rico

| IN RE:<br><br>JORGE A. VERA VELEZ<br>    Querellado<br><br>    V. | Conducta<br>Profesional<br><br>99TSPR46 |
|---|---|

Número del Caso: AB-96-81

Abogados de la Parte Querellante: LIC. CARMEN H. CARLOS
DIRECTORA INSPECCION DE NOTARIAS

HON. CARLOS LUGO FIOL
PROCURADOR GENERAL

LIC. CYNTHIA IGLESIAS QUIÑONES
PROCURADORA GENERAL AUXILIAR

Abogados de la Parte Querellada: POR DERECHO PROPIO

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/5/1999

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

In re:

Jorge A. Vera Vélez                    AB-96-81          CONDUCTA
                                                         PROFESIONAL

PER CURIAM

San Juan, Puerto Rico a 5 de abril de 1999

El 19 de agosto de 1996, el señor Juan I. Arvelo Toledo presentó una queja contra el licenciado Jorge A. Vera Vélez[1] basada en su insatisfacción con los servicios profesionales que le prestó el aludido letrado. Luego de que el Lcdo. Vera Vélez contestara la queja, referimos el caso a la Oficina de la Directora de Inspección de Notarías ("O.D.I.N."). Conforme el criterio de, y el Informe que nos rindió, la O.D.I.N., de las seis imputaciones que el Sr. Arvelo hizo en contra del

---

[1]  El Lcdo. Vera Vélez fue admitido por este Tribunal al ejercicio de la abogacía el 3 de noviembre de 1960 y le fue expedida la autorización para ejercer la notaría el 23 de noviembre de 1960.

Lcdo. Vera Vélez, solo una podría ser constitutiva de alguna violación a las disposiciones de la Ley Notarial[2], su Reglamento[3], o a los Cánones de Etica Profesional.[4] Mediante dicha alegación, el quejoso imputó al Lcdo. Vera Vélez haber autorizado una escritura de compraventa, en la cual el Sr. Arvelo compareció como otorgante, sin expresar en la misma todas las cargas y gravámenes que afectaban la propiedad objeto de la transacción.

En su Informe, la Directora nos indicó que, de las posiciones expresadas por ambas partes, se desprendía una serie de conflictos de credibilidad que ameritaban ser objeto de una investigación más amplia por parte del Procurador General. Una vez le dimos la oportunidad al notario querellado para que expusiera su posición en cuanto al Informe de la Directora, referimos el asunto a la Oficina del Procurador General para que ampliara la investigación. En su comparecencia ante nos, el Procurador coincide con la Directora de la O.D.I.N. en que el Lcdo. Vera Vélez faltó a la fe pública notarial y al Canon 35 de los Cánones de Etica Profesional.[5] Con respecto a las demás alegaciones señaladas por el Sr. Arvelo en su queja al igual que la Directora de la O.D.I.N., el Procurador General entiende que las mismas son inmeritorias y que fueron debidamente aclaradas y refutadas por el querellado.[6]

Concedimos término al querellado para que expusiera su posición en cuanto al Informe del Procurador General. Examinados el Informe rendido por la Directora de la O.D.I.N., el Informe de la Oficina del Procurador General y la réplica al mismo radicada por el Lcdo. Vera Vélez, le concedimos término a éste para que mostrara causa por la cual no debía ser suspendido del ejercicio de la notaría por un término no

---

[2]  Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2001 et seq.
[3]  Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, R. 1 et seq..
[4]  4 L.P.R.A. Ap. IX, C. 1 et. seq..
[5]  4 L.P.R.A. Ap. IX, C. 35.

<u>menor</u> de sesenta (60) días. El Lcdo. Vera Vélez compareció en cumplimiento de nuestra orden. Contando con su comparecencia, y estando en posición de resolver, procedemos a así hacerlo.

I

En relación con la queja presentada, el Sr. Arvelo manifiesta que contrató al Lcdo. Vera Vélez para que autorizara dos escrituras de compraventa y que éste último omitió expresar lo siguiente en una de ellas: (a) que el Sr. Arvelo, quien comparecía como comprador, había efectuado el pago; (b) que la finca objeto de la escritura tenía un gravamen hipotecario, a pesar de que él realizó el estudio de título correspondiente; (c) que el precio de venta era realmente de $60,000.00 y no $90,00.00 como se hizo constar en la escritura; y (d) que el precio de $60,000.00 se debía al estado de deterioro en que se encontraba la propiedad.

En su contestación, el Lcdo. Vera Vélez aclaró que el Sr. Arvelo se refería a la escritura número 18 de 26 de marzo de 1992. Explicó el querellado que no acreditó en dicha escritura que ante él se había efectuado el pago porque, en efecto, él no presenció cuando se hizo el mismo ni sabía si ya se había realizado; razón por la cual no podía consignar algo que no le constaba.

De igual forma, señaló que en la escritura había indicado que el precio de compraventa era de $90,000.00, y no de $60,000.00 como alegó el quejoso, porque en ningún momento se le informó que el precio fuera de $60,000.00 por motivo del deterioro de la propiedad. Según el querellado, luego de firmada la mencionada escritura número 18 surgió una discusión entre los otorgantes, éstos se fueron de su oficina y no fue hasta el otro día, o varios días después, que el quejoso le expresó que el precio convenido era de $60,000.00 y no de $90,000.00, a lo cual él le indicó que con la comparecencia de todos los otorgantes podría

---

[6] En ese respecto, coincidimos tanto con el criterio del Procurador General de Puerto Rico como con el de la Directora de la Oficina de

modificar el precio. En apoyo de su versión, el querellado presentó una declaración jurada de la secretaria que intervino en dicho asunto y la escritura número 18 de 26 de marzo de 1992.

De otra parte, argumentó además el notario querellado que no consignó la existencia de la hipoteca porque el Sr. Arvelo, quien era el adquirente, alegadamente tenía conocimiento de que la propiedad contaba con tal gravamen y porque el quejoso le mostró un cheque a favor del acreedor hipotecario por el importe total de la hipoteca, expresándole que retenía dicha cantidad para el pago de la hipoteca.

En el Informe de la O.D.I.N., la Directora indicó que ni en la descripción de la propiedad ni en ninguna otra cláusula de la escritura se indicó que la misma tuviera alguna carga o gravamen. Lo único que el notario señaló fue que:

> "Yo el Notario, hago constar, que advertí a los otorgantes sobre la conveniencia de realizar un estudio de título; que el mismo se efectuó y la información al respecto en esta escritura refleja la condición registral de la finca objeto de esta transacción a la que los otorgantes dan su conformidad." (Enfasis suplido)

A la luz de lo que consignó en la escritura el querellado, se observa que éste dio fe notarial sobre las cargas y gravámenes que afectaban a la propiedad, contrario a lo que reveló el estudio registral de la finca objeto de la transacción. Esto es así, ya que como hemos visto en la escritura se expresa que la misma refleja la condición registral de la finca tal y como surge del estudio de título que él realizó, lo cual no es cierto. El notario, no hay duda, debió haber hecho mención de la hipoteca que gravaba a la propiedad y del alegado acuerdo entre las partes por medio del cual el comprador se comprometía a pagar la hipoteca con tal de que se redujera el precio de venta. De tal manera, hubiese plasmado en la escritura tanto la realidad registral como la extrarregistral. Coincidimos con la evaluación realizada por la Directora de la O.D.I.N., y el Procurador General, en que al así proceder el Lcdo. Vera Vélez violó la fe pública

---

Inspección de Notarías.

notarial y el Canon 35 de los Cánones de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 35. Veamos.

## II

Reiteradamente este Tribunal ha expresado que la notaría es una función que requiere cuidado y que debe ser ejercida con sumo esmero y celo profesional. In re: Torres Olmo, Opinión Per Curiam y Sentencia de 23 de abril de 1998; In re: Rodríguez Mena, 126 D.P.R. 205 (1990); In re: Vergne Torres, 121 D.P.R. 500 (1988). En el despliegue de esta función el notario está obligado a cumplir estrictamente con la Ley Notarial, los Cánones de Etica Profesional y el contrato entre las partes. De lo contrario, el notario se expone a las sanciones disciplinarias correspondientes. In re: Torres Olmo, ante; In re: Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993).

Como es sabido, el notario es custodio de la fe pública y como tal, cuando autoriza un documento, presuntamente da fe y se cerciora de que ese instrumento público cumple con todas las formalidades de la ley, de que es legal y verdadero y de que se trata de una transacción legítima y válida. In re: Feliciano Ruiz, 117 D.P.R. 269 (1986). "Es precisamente esta condición de certeza y confianza en sus actuaciones lo que le brinda eficacia y garantía al documento notarial. Por eso, es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial." In re Ramos, 104 D.P.R. 568, 570 (1976).[7]

---

[7] De conformidad con las disposiciones de la Ley Notarial:

"[e]l notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento." 4 L.P.R.A. sec. 2002.

En atención de lo anterior, este Tribunal ha resuelto que faltar a la veracidad de los hechos es una de las faltas más graves en que un notario, como custodio de la fe pública, puede incurrir, "...ya que la certificación de un hecho falso constituye un acto detrimental a la fe pública". In re: Torres Olmo, ante; In re: Vera Vélez, Opinión Per Curiam y Sentencia de 6 de junio de 1994; In re: Peña Clos, Opinión y Sentencia de 29 de marzo de 1994. Hemos añadido, además, que el notario "[n]o sólo quebranta la fe pública notarial sino también socava la integridad de la profesión al incumplir con el deber de honradez y sinceridad que a todo abogado le impone el Canon 35 de Etica Profesional[8]." In re: Rivera Arvelo y Ortiz Velázquez, ante. El aludido canon compele a los abogados a ejercer su magisterio con honradez y sinceridad, así como a comportarse de manera digna y honorable, tanto en su labor de abogacía como en su función notarial. In re: Torres Olmo, ante.

Asimismo este Tribunal ha establecido que otorgar un documento notarial en contravención de nuestra Ley Notarial, como sería consignar un hecho falso en un documento público, constituye una violación al Canon 38 de los Cánones de Etica Profesional[9]. Este precepto ético exige de los abogados que se esfuercen, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión. In re: Torres Olmo, ante.

---

Véase, además, la Regla 2 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, R.2.

[8] En su parte pertinente, el Canon 35 de los Cánones de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 35, lee como sigue:

> "El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas...." (Enfasis suplido).

[9] El Canon 38 de los de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 38, dispone, en parte, que:

> "El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia profesional...." (Enfasis suplido).

No se requiere que el notario haya faltado a la verdad intencionalmente para faltar a la fe pública y a los Cánones de Etica Profesional. In re: Rivera Arvelo y Ortiz Velázquez, ante; In re: Chaar Cacho, 123 D.P.R. 655 (1989). Más bien, puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario o de una confianza desmesurada en las manifestaciones de otros compañeros de la profesión. Ibid.

Para evitar que un notario asevere, consciente o inconscientemente, un hecho falso, este Tribunal le ha impuesto el deber de hacer las averiguaciones mínimas que requieren las normas más elementales de la profesión y que en aquellas ocasiones en que tenga duda sobre lo expresado por el otorgante indague más allá de lo requerido comúnmente. In re: Vera Vélez, ante; In re: Peña Clos, ante.

A estos efectos, y en lo que respecta al caso de autos, en Goenaga v. O´Neill de Milán, 85 D.P.R. 170, 194 (1962), expresamos que el notario que autoriza una escritura no puede ignorar el estado registral de la propiedad sobre la cual las partes otorgan la escritura a la fecha del otorgamiento. En Chévere v. Cátala, 115 D.P.R. 432, 443-444 (1984), reconocimos que:

> "[La] investigación de los antecedentes, al igual que la determinación de cargas y gravámenes a hacerse en la escritura, resultan de incuestionable trascendencia, para 'efectos civiles (por ejemplo, saneamiento por gravámenes de la finca vendida sin mencionarlo la escritura)'; para 'efectos registrales, para la confrontación con las que figuren en el Registro, si bien la falta de expresión de cargas en las escrituras no es defecto que impida la inscripción del título'; y a 'efectos notariales, porque la determinación de las cargas es necesaria para la posterior concreción en la parte dispositiva de las responsabilidades que contrae cada parte contratante.'; a 'efectos fiscales...'" (Enfasis suplido).

Por tal razón, cuando un abogado-notario que autoriza una escritura de compraventa y hace constar en dicha escritura que la propiedad está libre de cargas y gravámenes, hecho contrario a la realidad registral, éste viola la fe pública notarial y el Canon 35 de Etica Profesional.[10]

---

[10] 4 L.P.R.A. Ap. IX, C. 35.

In re: Moreira Avilés, Opinión Per Curiam de 13 de noviembre de 1998; In re: Ramos Méndez y Cabiya Ortiz, 120 D.P.R. 796, 797 (1988). De igual forma actúa impropiamente un notario cuando no hace constar, en una escritura de compraventa, el hecho de que la propiedad objeto de la transacción está afecta a una hipoteca y que se retiene del precio a pagarse por la misma a los vendedores la suma de dinero correspondiente al balance de dicho gravamen, así como el hecho de que tiene ante sí el cheque que ha sido expedido a esos efectos. In re: Delgado, 120 D.P.R. 518, 526 (1988).

## III

En el presente caso, el notario querellado no actuó conforme a lo anteriormente expresado. Otorgó una escritura en donde aseveró que se efectuó un estudio de título y que "...la información al respecto en esta escritura refleja la condición registral de la finca objeto de esta transacción...". Tal aseveración es falsa porque el estudio de título reveló que la propiedad estaba gravada por una hipoteca y este hecho no se mencionó en la escritura. Los argumentos que esgrimió el querellado en su defensa —-el supuesto conocimiento del adquirente de que existía la hipoteca y que este último le enseñó el cheque a favor del acreedor hipotecario— no lo releva de su obligación. El notario debió expresar la realidad registral, tal como surgía del estudio de título, consignando la existencia del gravamen hipotecario y explicar el alegado acuerdo entre las partes en cuanto a que el comprador retenía cierta cantidad para el pago de la hipoteca.

Por todo lo expuesto, resolvemos que el Lcdo. Vera Vélez infringió las disposiciones de la Ley Notarial de Puerto Rico[11], los Cánones 35 y 38 de los Cánones de Etica Profesional[12], en tanto y en cuanto los mismos exigen que todo abogado actúe con honestidad y sinceridad en su gestión profesional y mantenga el honor y la dignidad de la profesión legal.

---

[11]  4 L.P.R.A. sec. 2002.

## IV

En repetidas ocasiones hemos expresado que al determinar la sanción disciplinaria aplicable a un abogado que ha incurrido en conducta impropia, este Tribunal toma en consideración factores tales como "...el previo historial del abogado; si se trata de una primera falta o de una conducta aislada; y si el abogado goza de buena reputación en la comunidad". In re: Rivera Arvelo y Ortiz Velázquez, ante.

Al aplicar lo anterior al caso de autos, encontramos que ésta es la segunda ocasión en que este Tribunal se ve en la obligación de disciplinar al Lcdo. Vera Vélez. En la primera ocasión, la acción disciplinaria se basó en que el querellado expresó en una escritura de compraventa que otorgó que uno de los comparecientes era soltero cuando en realidad era casado.

Mediante Opinión Per Curiam de 6 de junio de 1994, decidimos solamente censurar al notario en vista de que durante los más de 34 años que llevaba ejerciendo la abogacía y la notaría había gozado de buena reputación y que nunca había sido disciplinado anteriormente. Sin embargo, le apercibimos de que en el futuro debía dar fiel cumplimiento a los deberes impuestos por nuestra Ley a los notarios como funcionarios de la fe pública y a los postulados que emanan de los Cánones de Etica Profesional que rigen la profesión de abogado.

Conforme demuestra este caso, el Lcdo. Vera Vélez hizo caso omiso a nuestra advertencia. Dado la naturaleza repetitiva de su conducta, desafiando las advertencias que le hiciéramos a esos efectos, y que el notario querellado estaba consciente de lo que expresaba en la escritura era falso, socavando así la confianza en él depositada por ley, se suspende al Lcdo. Vera Vélez, únicamente, del ejercicio de la notaría en Puerto Rico por el término de un año.[13]

Se dictará Sentencia de conformidad.

---

[12]   4 L.P.R.A. Ap. IX, C. 35 y 38.

---

[13] La anterior sanción sin menoscabo de la responsabilidad civil del notario ante las partes y terceros.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**In re:**

**Jorge A. Vera Vélez**          **AB-96-81**          **CONDUCTA**
                                                      **PROFESIONAL**

**SENTENCIA**

**San Juan, Puerto Rico a 5 de abril de 1999**

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se suspende al Lcdo. Vera Vélez, únicamente, del ejercicio de la notaría en Puerto Rico por el término de un año.

        **Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.**

                                        **Isabel Llompart Zeno**
                        Secretaria del Tribunal Supremo