per curiam:
En esta ocasión nos vemos precisados a ejer-cer nuestra facultad disciplinaria en contra de un miembro de la profesión por entender que sus actuaciones se apar-tan de las normas éticas que rigen el ejercicio de la profe-sión de la abogacía y la notaría en nuestra jurisdicción. Por las razones que se exponen a continuación, ordenamos la suspensión inmediata por un término de tres meses del Ledo. Edwin Belén Trujillo del ejercicio de la abogacía y la notaría. Veamos los antecedentes fácticos que dieron ori-gen a la querella de autos.
HH
El Ledo. Edwin Belén Trujillo fue admitido al ejercicio de la abogacía el 27 de septiembre del956 y a la notaría el 8 de octubre del mismo año.(1) El 7 de diciembre de 1999, los señores Rodolfo Font, William Encamación y Robert *797 Gómez presentaron ante nos una queja contra el licenciado Belén Trujillo (el querellado) sobre violación de la ética profesional. El 4 de abril de 2001, la Oficina de Inspección de Notarías (ODIN) sometió ante este Tribunal su informe relacionado al caso de autos. En este se concluyó que el licenciado Belén Trujillo infringió los Cánones 21, 35 y 38 (4 L.P.R.A. Ap. IX). Asimismo, la ODIN manifestó que in-currió en una violación al Art. 15(j) de la Ley Notarial de Puerto Rico (Ley Notarial), 4 L.P.R.A. see. 2033.
En atención a ese informe, el 11 de mayo de 2007, este Tribunal le ordenó al Procurador General que sometiera los cargos en contra del querellado por conducta antiética en el ejercicio de la profesión de la abogacía y la notaría. La querella se presentó el 13 de agosto de 2009. En relación con la violación al Canon 35, supra, se señala allí que el licenciado Belén Trujillo autorizó la escritura de compra-venta —Escritura Pública número 13— mediante la cual Caguas Warehouse Lumber, Inc., vendió al Concilio Misión Cristiana Fuente de Agua Viva, Inc. (Concilio) —corpora-ción sin fines de lucro— una finca ubicada en el Barrio Hato Tejas del municipio de Bayamón. Posteriormente, esa finca fue objeto de un litigio sobre su titularidad. Durante los procedimientos de ese litigio, el querellado fue citado como testigo e hizo, además, una declaración jurada a favor de la Congregación Independiente Restauración en Cristo (la Congregación), organismo religioso que recla-maba ser el verdadero titular de la finca antes mencionada. En esencia, en esa declaración expresó que la Congregación era el dueño real de la finca en controversia y no el Concilio quien había sido designado como compra-dor en la Escritura Pública número 13. Admitió que había hecho constar en esa escritura pública que el Concilio era el comprador de la finca para facilitar su inscripción en el Registro de la Propiedad porque esa entidad, a diferencia *798 de la Congregación, contaba con personalidad juridica.(2) Por causa de esta declaración se le imputó al querellado faltar a su deber de sinceridad y honestidad en el ejercicio de la profesión, lo que está prohibido al amparo del Canon 35 del Código de Ética Profesional, supra.
Además, con relación al Art. 15(j) de la Ley Notarial, supra, se adujo que el licenciado Belén Trujillo no proveyó en la Escritura Pública número trece (13) las advertencias específicas requeridas en la compraventa de la finca. En específico, se hace alusión a la falta de orientación a los otorgantes sobre la relación que existía entre el Concilio y la Congregación, aun cuando este la conocía. En ese sen-tido, se esperaba que este orientara a los otorgantes que en 1991 el Concilio y la Congregación suscribieron un acuerdo de afiliación intitulado Contrato y Acuerdo de Fusión y de Integración al Concilio Misión Cristiana Fuente de Agua Viva, Inc., y de su Consejo Apostólico. Producto de ese con-venio, se disolvió la Congregación, quedando únicamente el Concilio. También se estableció una cláusula que disponía que las propiedades de la Congregación se inscribirían a favor del Concilio. No obstante, se añadió que de surgir eventualmente una separación entre esas entidades, las propiedades regresarían a la Congregación.
En lo atinente a la violación del Canon 21, supra, se indicó que el deber de lealtad impuesto por ese precepto el querellado lo quebrantó al suscribir una declaración ju- *799 rada en la que expuso que la designación del Concilio como comprador en la Escritura Pública número 13 fue nominal. En otras palabras, la declaración jurada era contraria a los intereses del Concilio porque impugna su titularidad sobre la propiedad en controversia.
Por último, se alegó también que violó el Canon 38, supra, porque en representación suya y de una entidad en proceso de incorporación, hizo una oferta para opcionar la compraventa de una finca perteneciente al Concilio. Esa propiedad inmueble la había adquirido el Concilio en una compraventa que se elevó a Escritura Pública —número 30— y fue autorizada por el notario Rafael Alen González. Asimismo, contactó y encomendó a un agente de bienes raíces para que tramitara la venta de las propiedades que surgen en las Escrituras Públicas números 13 y 30.
El 2 de diciembre de 2009, el licenciado Belén Trujillo presentó su contestación a la querella. Alegó que no violó el Canon 35, supra. Sostuvo que la redacción de la Escritura Pública número 13 fue conforme a la voluntad del Concilio y la Congregación, según se expresó en el contrato privado de afiliación celebrado entre esas entidades. Es decir, que las propiedades se inscribirían a favor del Concilio, pero al desafiliarse se le devolverían a la Congregación las propie-dades inmuebles.
En relación con la insuficiencia de las advertencias en el documento público, el querellado se limitó a señalar que no tenía la obligación de hacer advertencia alguna al respecto. Esto, pues los efectos del contrato de fusión recaían única-mente sobre las entidades allí contratantes y no tenían efecto sobre terceros.
En cuanto a la imputación de violación al Canon 21, supra, afirmó que su intervención en el juicio fue en carác-ter de testigo y no como abogado de las partes otorgantes. Por ende, no infringió el deber de lealtad que cobija la re-lación abogado-cliente.
Sobre la imputación de infringir el Canon 38, supra, aseveró que sus gestiones para la venta de los terrenos en *800 controversia no se relacionan con su trabajo como notario ni como abogado. Añadió que su oferta de compra es con relación a un terreno adquirido mediante la Escritura Pú-blica número 30, la cual autorizó otro notario; y su gestión se limitó únicamente a contactar posibles compradores para esos predios de terreno.
Así las cosas, el 8 de febrero de 2010 emitimos una re-solución mediante la cual nombramos a la Hon. Eliadís Orsini Zayas, exjueza del Tribunal de Primera Instancia, como Comisionada Especial para que evaluara la prueba relacionada con este caso y luego nos presentara un in-forme con sus determinaciones y recomendaciones. Tras la celebración de varias vistas evidenciarías, la Comisionada nos presentó su informe. En este se determinó que el que-rellado no violó las disposiciones de los cánones de ética que se le imputan. En relación con el cargo por violación al Canon 35, supra, se expresó que el licenciado Belén Trujillo no participó de ninguna manera en el convenio de fu-sión entre ambas entidades y, aun cuando supo del acuerdo de fusión, ello no tenía relevancia para el negocio que ante él se concretó. Referente a la violación al Art. 15(j) de la Ley Notarial, supra, indicó que de la queja no surge nada al respecto y que las imputaciones a esta falta notarial surgieron luego de presentada la queja. En cuanto al cargo por infracción al Canon 21, supra, sostiene que el quere-llado no actuó como abogado de las partes en ningún momento. Añadió que la declaración jurada se prestó en capacidad de testigo, y no en carácter de abogado de al-guna de esas entidades. Por último, en relación con el cargo de violación al Canon 38, supra, señaló que el quere-llado realizó gestiones para la venta de unas propiedades que no se asocian con la Escritura Pública número 13 que autorizó, sino con la Escritura Pública número 30, que se otorgó ante otro notario. Según los argumentos antes ex-puestos, la Comisionada nos recomendó desestimar la que-rella contra el licenciado Belén Trujillo.
*801 Consecuente a lo anterior, emitimos una resolución el 12 de noviembre de 2010 en la que autorizamos a desistir del tercer cargo imputado en la querella, el cual hace alu-sión a la violación al Canon 21, supra. No obstante, deja-mos vigentes los demás cargos señalados en la querella. En consideración a la situación fáctica planteada, procedemos a dirimir las imputaciones a la infracción de los Cánones 35, 38 y la falta al Art. 15(j) de la Ley Notarial, supra.
1 — I HH
 A. La profesión de la notaría requiere cuidado y se debe ejercer con sumo esmero y celo profesional. In re Vera Vélez, 148 D.P.R. 1, 6 (1999). El notario es custodio de la fe pública notarial. In re Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993). En ese sentido se le ha revestido por ley de la autoridad suficiente para dar fe y autenticidad a los negocios jurídicos, actos y otros hechos extrajudiciales que ante él se realicen. Id.
Como custodio de la fe pública, cuando un notario autoriza un documento, presuntamente da fe y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986). Es precisamente esta presunción de legalidad, veracidad y legitimidad lo que le brinda certeza, garantía y eficacia al documento notarial. In re Rivera Aponte, 169 D.P.R. 738, 742 (2006). Véase In re Ramos, 104 D.P.R. 568, 570 (1976). Por eso, es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial. In re Ramos, supra. Al ejercer esta función pública, el notario debe cumplir, estrictamente, tanto con la Ley Notarial como con el Código de Etica Profesional, In re Rivera Aponte, supra.
En relación con el deber de sinceridad y honra- *802 dez, el Canon 35, supra, dispone que “[l]a conducta de cual-quier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus com-pañeros debe ser sincera y honrada”. El canon antes citado compele a los abogados a ejercer su magisterio con honra-dez y sinceridad, así como a comportarse digna y honora-blemente, tanto en su labor de abogado como en su función notarial. In re Torres Olmeda, 145 D.P.R. 384 (1998). En repetidas ocasiones hemos expresado que faltar a la vera-cidad de los hechos es una de las omisiones más graves que puede cometer un notario. In re Vera Vélez, supra; In re Landing; y Aulet, 107 D.P.R. 103 (1978). Certificar un he-cho falso constituye un acto en detrimento a la fe pública. In re Torres Olmeda, supra; In re Peña Clos, 135 D.P.R. 590 (1994). Asimismo, dar fe de un hecho falso, “[n]o sólo que-branta la fe pública notarial, sino también socava la inte-gridad de la profesión al incumplir con el deber de honra-dez y sinceridad que a todo abogado le impone el Canon 35 del Código de Etica Profesional ...”. In re Rivera Arvelo y Ortiz Velázquez, supra, pág. 863.
El deber con la verdad es de tal trascendencia que, incluso, hemos pronunciado que no se requiere el elemento de intención para faltar a la fe pública y a los cánones. In re Chaar Cacho, 123 D.P.R. 655 (1989). Ese quebrantamiento puede ser producto de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario, o de una confianza desmesurada en las manifestaciones de otros compañeros de la profesión. In re Vera Vélez, supra; In re Chaar Cacho, supra. Para evitar que un notario asevere, consciente o inconscientemente, un hecho falso, este Tribunal le ha impuesto el deber de hacer las averiguaciones mínimas que requieren las normas más elementales de la profesión y que en aquellas ocasiones en que tenga duda sobre lo ex-presado por el otorgante, indague más allá de lo requerido comúnmente. In re Vera Vélez, supra.
*803 Por otro lado, hemos establecido que consignar un hecho falso en un documento público constituye, a su vez, una violación al Canon 38 del Código de Etica Profesional, supra. In re Vera Vélez, supra. Este precepto ético exige que los abogados se esfuercen, al máximo de su capacidad, en exaltar el honor y la dignidad de la profesión. Id. En lo aquí pertinente, este canon dispone:
El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. 4 L.P.R.A. Ap. IX.
Además, es sabido que todo abogado debe evitar hasta la apariencia de conducta impropia. Véase Canon 38, supra. Esta exigencia se fundamenta “ ‘en la idea de que la confianza e imagen de la profesión se lacera no sólo cuando se viola una norma específica de los cánones de ética profesional, sino también cuando la conducta del abogado parece impropia’ ”. (Enfasis suprimido.) In re Pons Fontana, 182 D.P.R. 300, 310 (2011).
B. El notario, al autorizar una escritura pública, tiene cuatro deberes principales:
"... 1. [i]ndagar la voluntad de los otorgantes];] 2.[f]ormular la voluntad indagada];] 3.[i]nvestigar ciertos hechos y datos de los que depende la eficacia o validez del negocio];] 4. darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efec-tos y consecuencia [s d]el negocio, y se den cuenta de los ries-gos que corren en celebrarlo.” (Corchetes en el original y énfa-sis suprimido.) Chévere v. Cátala, 115 D.P.R. 432, 438 (1984).
En cuanto a las advertencias notariales, el Art. 15(f), de la Ley Notarial, supra, dispone:
(f) El haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio *804 prudente del notario, detallarse expresamente. 4 L.P.R.A. see. 2033(f).
El deber de ilustrar a los otorgantes tiene como objetivo lograr que estos concurran al acto notarial en un estado de conciencia informada. De esa forma, comprenderán el sen-tido, así como los efectos y las consecuencias, del negocio jurídico que van a llevar a cabo y se percatarán de los ries-gos que corren al celebrarlo. Chévere v. Cátala, supra. En el cumplimiento de esta obligación, el notario se debe cer-ciorar de compartir con las partes todas aquellas explica-ciones, aclaraciones y advertencias necesarias para lograr el consentimiento informado de los otorgantes. Feliciano v. Ross, 165 D.P.R. 649 (2005); In re Pizarro Colón, 151 D.P.R. 94, 106 (2000). Así, pues, el consejo del notario debe guiar la redacción del documento público y dar luz en el acto final del otorgamiento. Lo anterior se requiere porque “[l]a fe pública notarial tiene como base la voluntad ilustrada de los contratantes ...”. In re Meléndez Pérez, 104 D.P.R. 770, 776 (1976). Véanse: Feliciano v. Ross, supra; In re Pizarro Colón, supra.
El ejercicio de la notaría trasciende la mera legalización de unas firmas. Su actuación “implica una gestión intelectual y una aplicación inteligente de los principios de derecho positivos y jurisprudenciales”. In re Salas Davis, 145 D.P.R. 539, 544 (1998).
III
Debemos examinar si el querellado infringió el deber de sinceridad y honestidad que impone las normas de ética de la profesión de la abogacía.
Del trasfondo fáctico de este caso surge que el quere-llado autorizó la Escritura Pública número 13 en la cual designó como comprador de una finca al Concilio. No obs-tante, con posterioridad al pleito sobre la titularidad de esa propiedad inmueble, prestó una declaración jurada en la *805 que afirmó que el dueño de la finca era la Congregación. Además, expresó que la designación del Concilio era nominal para, de este modo, facilitar la inscripción en el Regis-tro de la Propiedad porque la Congregación no tenía perso-nalidad jurídica. Añadió que la designación del Concilio fue conforme con el acuerdo de fusión celebrado entre el Con-cilio y la Congregación. Como es ya sabido, en ese convenio se dispuso que las propiedades de la Congregación se ins-cribirían a nombre del Concilio, pero, de separarse ambas entidades, las propiedades regresarían a la Congregación.
Colegimos que el querellado infringió su deber de since-ridad y honestidad al designar como comprador al Concilio cuando tenía razones para pensar que la parte adquirente era, en realidad, otra persona o entidad. Siendo única-mente el Concilio un testaferro en el contrato de compraventa. El querellado debió abstenerse de autorizar la escritura pública de compraventa. La fe pública le otorga al notario la responsabilidad de hacer constar la verdad en los documentos públicos, y el no cumplir con ella se considera una falta grave en el ejercicio de la abogacía. Al así actuar, el notario no fue íntegro con los deberes que le impone la fe pública notarial. Actuar conforme a la vo-luntad de las partes no subsana la infracción cometida. El notario, como abogado, debe actuar conforme a su propia conciencia. La voluntad de las partes u otorgantes no es óbice para que el notario cumpla con sus deberes.
La actuación del querellado, a su vez, incidió sobre sus obligaciones éticas, faltando así al Canon 38, supra. Ante-riormente, hemos expresado que faltar a la verdad en un documento público es un acto que infringe el honor y la dignidad de la profesión.
En lo concerniente a la falta al Art. 15(j) de la Ley Notarial, supra, estimamos que una advertencia no subsana-ría la falta de veracidad en la escritura pública. Es decir, si el comprador era realmente la Congregación o cualquier otra persona que no fuera el Concilio, este último no podía *806 figurar como tal en la escritura pública. Ello equivaldría a advertir que en el documento público se instituyó un tes-taferro, lo cual está prohibido en nuestro ordenamiento jurídico. Ante los hechos particulares de este caso, no pro-cede este cargo.
Además, es doctrina reiterada que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos considerar como factores atenuantes o agravantes los siguientes: la reputación del abogado en su comunidad, su historial previo, si es su primera falta, si aceptó la falta y hubo sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, si se resarció al cliente, y cualesquiera otras consideraciones, ya bien atenuantes o agravantes que medien de acuerdo a los hechos. In re Guadalupe, Colón, 155 D.P.R. 135 (2001); In re Vélez Barlucea, 152 D.P.R. 298 (2000); In re Díaz Ortiz, 150 D.P.R. 418, 427 (2000).
En el caso de autos, consideramos como atenuantes a favor del licenciado Belén Trujillo el hecho de que durante su carrera profesional —de más de cincuenta años— no había sido objeto de alguna medida disciplinaria hasta el 1990; es decir, hace más de veinte años. Tampoco surge que sus actuaciones hayan sido con ánimo de lucro.
IV
Por los fundamentos que anteceden, ordenamos la sus-pensión inmediata del Ledo. Edwin Belén Trujillo del ejer-cicio de la profesión de la abogacía y la notaría por un término de tres meses, contados a partir de la notificación de esta opinión per curiam y Sentencia.
El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representa-ción y deberá devolver a estos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no rendido. Además, tiene la obligación de acreditar y cer- *807 tificar ante este Tribunal el cumplimiento con lo anterior, dentro de un término de treinta días. Asimismo, tiene el deber de informar de inmediato su suspensión a los foros judiciales y administrativos.
Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Belén Trujillo y entre-garlos a la Directora de la Oficina de Inspección de Nota-rías para la correspondiente investigación e informe.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió por entender que no se justifica descartar el Informe some-tido por la Comisionada Especial que atendió la querella de autos y porque el curso de acción seguido por el Tribunal afecta innecesariamente la seguridad jurídica de las tran-sacciones en que las partes contratantes interesan realizar conscientemente una simulación relativa válida que no transgreda el orden público o la ley. Las Juezas Asociadas Señoras Fiol Matta y Rodríguez Rodríguez, así como el Juez Asociado Señor Estrella Martínez, no intervinieron.

 Anteriormente, por hechos ajenos a los de este caso, fue suspendido de la práctica de la abogacía por un término de un año y seis meses. En diciembre de 1991 emitimos una resolución mediante la cual le concedimos la reinstalación al ejercicio de la profesión. Véase In re Belén Trujillo, 126 D.P.R. 743 (1990).

 En específico, el querellado, por medio de la declaración jurada, expone:
“Que no obstante lo anterior, se incluyó como parte puramente formal al Con-cilio Fuente de Agua Viva, Inc. a los únicos efectos de cumplir con aquella disposición del ‘Contrato y Acuerdo de Fusión, etc.’ que establece que, aunque se reconoce el derecho de pleno dominio a la Congregación, se reconoce un derecho de fideicomiso limitado a la inscripción registral en el Registro de la Propiedad al Concilio Fuente de Agua Viva, Inc. Esta designación del Concilio Fuente de Agua Viva, Inc. (‘compra-dora’) fue nominal a solicitud del representante autorizado del Concilio en aquel momento, yo [sic] de conformidad de las disposiciones de la ‘Filosofía’ y de los prin-cipios bíblicos que me explicó en particular Hageo 2:8; I Crónicas, Cap. 29. La ins-cripción registral conforme a la ‘Filosofía’ y al ‘Acuerdo y Contrato de Fusión’ res-ponde, única y exclusivamente, a un propósito instrumental de facilitar una inscripción a través de una corporación, porque en aquel momento la Congregación no está la [sic] incorporada.”