

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br><br>Edmundo Ayala Oquendo | 2012 TSPR 86<br><br>185 DPR ____ |

Número del Caso: CP-2008-8

Fecha: 3 de mayo de 2012

Oficina de la Procuradora General

       Lcda. Maite Oronoz Rodríguez
       Procuradora General Interina

       Lcda. Edna E. Rodríguez Benítez
       Procuradora General Auxiliar

Abogado del Querellado:

       Por derecho propio

Materia: Conducta Profesional- La suspensión será efectiva el 10 de mayo de 2012 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Edmundo Ayala Oquendo                    CP-2008-8

*PER CURIAM*

San Juan, Puerto Rico a 3 de mayo de 2012

Una vez más, nos vemos compelidos a suspender a un abogado del ejercicio de la abogacía y de la notaría por violar los Cánones de Ética Profesional en su función como notario público. Reiteradamente hemos dicho que "el notario tiene que ser en extremo cuidadoso y debe desempeñar su ministerio con esmero, diligencia y estricto celo profesional". *In re Melvin I. Martínez Almodóvar*, 180 D.P.R. 776 (2011). Veamos.

I

El 26 de agosto de 2004 el señor Nelson Vélez Ayón presentó una queja juramentada ante este Tribunal. Sostuvo que fue víctima de un fraude en el

que alegadamente estuvo involucrado el abogado de epígrafe. Expresó que el licenciado Ayala Oquendo, el 12 de abril de 2002, autorizó la Escritura de Compraventa número 17 (Escritura 17) sobre unos solares ubicados en el Barrio Quebrada en Fajardo. Sostuvo, también, que el abogado no realizó un estudio de título de los solares objeto de la venta y que, producto de su falta de diligencia en sus funciones como notario, la Registradora de la Propiedad denegó la inscripción de la escritura de compraventa por falta de tracto.

En su contestación a la queja,[1] el licenciado Ayala Oquendo confirmó que tanto el quejoso como el señor Nicolás Tiburcio Rivera visitaron su oficina para contratar sus servicios y otorgar la Escritura 17 de Compraventa sobre dos solares pendientes de segregación. Adujo que la finca en cuestión había sido adquirida por el señor Tiburcio Rivera mediante Declaratoria de Herederos de su padre fallecido y adjudicada mediante la Escritura número 35 de Segregación y Liquidación de Herencia, otorgada en Fajardo el 19 de julio de 1999.[2] Argumentó que

---

[1] Se presentaron dos quejas por los mismos hechos en diferentes foros. La queja presentada en el Colegio de Abogados está identificada con el alfanumérico Q-2004-201 y la que se presentó ante este Tribunal está identificada con el alfanumérico AB-2004-0195. El licenciado Ayala Oquendo contestó ambas en el escrito que presentara ante este Foro.

[2] Dicha escritura fue otorgada por el señor Tiburcio Rivera (vendedor en la Escritura 17), la señora Rivera Calderón (madre del señor Tiburcio Rivera) y la señora Tiburcio Rivera (hermana del señor Tiburcio Rivera). En ésta los comparecientes expusieron ser dueños de dos propiedades que en vida habían pertenecido a Don Nicolás Tiburcio Martínez y que éstos habían adquirido mediante Resolución

la certeza de que los solares eran propiedad del causante provenía de la Escritura número 5 autorizada por el licenciado Robles Abraham el 14 de enero de 1982.[3] Además, sostuvo que de la inscripción previa se desprendía que tanto el señor Tiburcio Martínez como la señora Lydia Rivera Calderón eran los propietarios del solar objeto de la Escritura 17 que originó la queja.

Adujo, además, que la Registradora de la Propiedad no le dio paso a la inscripción porque entendió, erróneamente, que la finca original de la cual se segregaban los solares era privativa de la señora Rivera Calderón, madre del vendedor. Argumentó, asimismo, que eran falsas las imputaciones hechas por el quejoso sobre que no había realizado un estudio de título. Indicó que la causante de la falta de inscripción fue la Registradora quien se negó, según alega, a inscribir "por capricho y sin fundamento legal para ello".[4] Informó, también, que el quejoso le notificó que otra abogada iba a resolver el problema por lo cual no intervino más en el asunto.

---

de Declaratoria de Herederos identificada con el alfanumérico CD-97-871. De la escritura se desprende que los solares F y B fueron adjudicados al señor Tiburcio Rivera.

[3] La Escritura número cinco es una de Segregación, Liberación, Dedicación de Terreno a Uso Público y Agrupación. En ella comparecieron el causante, su esposa la señora Rivera Calderón, el Municipio de Fajardo y Oriental Federal Savings and Loan Association of Puerto Rico. Expusieron que los esposos comparecientes eran dueños en pleno dominio de un inmueble del cual se han hecho varias segregaciones. La finca es la número 5033 inscrita al folio 204 del tomo 152 del Registro de la Propiedad de Fajardo.

[4] Contestación a la querella [sic], pág. 4, 23 de septiembre de 2004.

Una vez el licenciado Ayala Oquendo contestó la queja presentada en su contra ordenamos a la Oficina de Inspección de Notarías (ODIN) que realizara la investigación correspondiente y que nos presentara un informe sobre la misma. ODIN, en cumplimiento de nuestro mandato, rindió el informe requerido y sostuvo que el licenciado Ayala Oquendo violó la fe pública notarial al otorgar la Escritura 17. Lo anterior, dado a que de una certificación registral que con propósitos investigativos pidiera al Registro de la Propiedad se desprendía que el solar en controversia era propiedad privativa de la señora Rivera Calderón. Sostuvo que si el licenciado Ayala Oquendo tenía dudas sobre la titularidad del inmueble debió clarificarlas antes de autorizar el negocio jurídico.

El licenciado Ayala Oquendo reiteró las defensas presentadas en la contestación a la queja y ODIN replicó que al momento de otorgarse la Escritura número 17 la única dueña del solar objeto de la misma era la señora Rivera Calderón, esposa del señor Tiburcio Martínez, causante del vendedor. Además, expresó que de las notas marginales de los asientos registrales surgía información contradictoria por lo cual el licenciado Ayala Oquendo debió primero clarificar los asuntos de titularidad antes de autorizar la Escritura 17. Igualmente, dijo que la escritura debió contar con advertencias específicas sobre las consecuencias legales de adquirir la propiedad en tales circunstancias y que al no haberse segregado la

finca al momento de la otorgación de la escritura el licenciado Ayala Oquendo estaba impedido de autorizar la misma. En la dúplica a la réplica de ODIN el querellado reiteró los argumentos esbozados anteriormente y agregó que al momento de autorizar la escritura estaba en la certeza legal que podía así hacerlo.

Escuchadas las partes, el 13 de abril de 2007 ordenamos al Procurador General presentar la querella correspondiente. Consecuentemente, el Procurador General presentó la querella, el 5 de marzo de 2008. Le imputó al licenciado Ayala Oquendo haber violado el Canon 18 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 18, así como la fe pública notarial, al autorizar la Escritura 17 sin antes aclarar la información contradictoria en cuanto a la titularidad de la finca. Además, sostuvo que violó el deber de diligencia establecido en el Canon 18, *ante*, así como la fe pública notarial al autorizar la Escritura 17 sobre Compraventa sin antes realizar el estudio registral correspondiente. En el tercer cargo se le imputó quebrantar el Canon 35 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 35, así como la fe pública notarial al dar fe en la Escritura 17 de que la finca objeto de la escritura estaba segregada cuando a dicha fecha la Administración de Reglamentos y Permisos no había emitido los permisos de segregación.

Luego de presentada la querella, el licenciado Ayala Oquendo compareció ante este Tribunal y solicitó que se paralizasen los procedimientos disciplinarios en su

contra. Fundamentó su petición en que los quejosos habían incoado una acción en cobro de dinero ante el Tribunal de Primera Instancia, Sala Superior de Fajardo.[5]   El Procurador General dijo estar de acuerdo con la paralización de los procedimientos hasta que el Tribunal de Primera Instancia resolviese la acción civil.  Así, el 21 de noviembre de 2008 ordenamos la paralización de los procedimientos en contra del notario querellado. El 26 de febrero de 2010 emitimos una Resolución donde le concedimos al licenciado Oquendo Ayala un término final e improrrogable para que le notificase a este Tribunal el estado de los procedimientos ante el foro de instancia. Le advertimos en aquel momento que de no contestar los requerimientos de este Tribunal podría enfrentar severas sanciones.[6]

Así las cosas, el 25 de marzo de 2010, el licenciado Ayala Oquendo nos informó que el caso civil se encontraba en "etapa de desistimiento por parte de Los Querellantes

---

[5] El caso, identificado con el alfanumérico NSCI 2003-76, se presentó contra el vendedor de los solares objeto de la Escritura número 17, don Nicolás Tiburcio Rivera.  Nicolás Tiburcio Rivera trajo al pleito, como tercero demandado, al licenciado Ayala Oquendo. El pleito entre el quejoso y los vendedores terminó con un acuerdo transaccional. De igual manera, según se desprende de un escrito habido en el expediente y titulado "Moción Aceptando Transacción y Solicitando se Dicte Sentencia Parcial", el quejoso llegó a un acuerdo transaccional con el licenciado Ayala Oquendo donde se comprometían, previo pago por parte del abogado querellado de una suma cierta de dinero, a desistir de la acción llevada ante este Tribunal.

[6] Cabe destacar que anterior a la Resolución de 26 de febrero de 2010 le habíamos ordenado lo mismo en dos oportunidades, a saber, el 24 de febrero de 2009 y el 21 de mayo del mismo año. A ambas, el licenciado Ayala Oquendo hizo caso omiso.

de la Querella de epígrafe".[7] A la moción anejó otra moción suscrita por el quejoso y el abogado de éste en el caso civil NSCI-200300076 donde se notifica que las partes han llegado a un acuerdo transaccional que incluye el desistimiento con perjuicio de la acción en contra del licenciado Ayala Oquendo y el Fondo de Fianza Notarial como así también desiste de la acción que se está llevando en contra del querellado ante este Tribunal.[8]

El 30 de abril de 2010 nombramos al Hon. Wilfredo Alicea López para que escuchara las partes y recibiera la prueba. De esta manera, el Comisionado Especial señaló vista para el 24 de junio de 2010. Sin embargo, el 2 de junio de 2010 compareció el licenciado Ayala Oquendo solicitando que se diera por desistida la querella voluntariamente. Específicamente, dijo que el acuerdo privado de transacción le impedía a los quejosos continuar con la querella en su contra ante este Tribunal.

Según se desprende de la minuta de la vista ante el Comisionado Especial, el licenciado Ayala Oquendo expresó lo que había señalado en la moción del 2 de junio. Además, agregó que del acuerdo privado de transacción restaba satisfacer la suma de cinco mil dólares ($5,000.00) pero que dicho pago estaba sujeto a que los

---

[7] Moción en cumplimiento de orden y sumisión suscrita por el licenciado Ayala Oquendo.

[8] El 9 de abril de 2010 comparecieron los quejosos y expresaron que firmaron la moción aceptando la transacción con mucha confusión y miedo. Sostuvieron que la oferta de transacción había sido verbal entre los abogados y que no tenían ningún documento que la garantizara. Solicitaron que se uniera la comparecencia a la querella ante nuestra consideración.

quejosos retiraran la queja. La Procuradora Auxiliar, por su parte, informó que la querella presentada tenía su origen en un informe de ODIN y que, por tanto, era necesario que dicha oficina expresara su posición sobre este asunto.

El 14 de octubre de 2010 compareció el quejoso y solicitó una vista de desacato. Nos comunicó que el licenciado Ayala Oquendo había incumplido con los términos del contrato privado de transacción y solicitó que se continuaran los procesos disciplinarios en su contra.[9]

El 30 de septiembre de 2010 continuaron los procedimientos ante el Comisionado Especial. Durante la vista, la Procuradora General Auxiliar sostuvo que había discutido el asunto con el personal de ODIN y que entendía que la querella no debía darse por desistida. Lo anterior porque ésta había originado en un informe de ODIN y no era a las partes a quien le correspondía retirarla. El notario querellado, por su parte, solicitó que se esperase el resultado de una vista ante el Tribunal de Primera Instancia señalada para dirimir si se incumplió o no con el contrato privado de transacción.

Luego de reseñaladas varias vistas ante el Comisionado Especial por diferentes razones, los quejosos solicitaron el desistimiento voluntario de la querella. Expresaron que así lo hacían dado a que el acuerdo privado

---

[9] A la moción de los quejosos se le adjuntó una comunicación escrita de la representación legal de éstos al licenciado Ayala Oquendo concediéndole un día para que cumpliese con el acuerdo privado de transacción habido entre las partes.

de transacción había sido satisfecho en su totalidad. Sin embargo, mediante Resolución del 13 de mayo de 2011, este Tribunal acordó seguir con los procedimientos en contra del notario querellado.

El 20 de enero de 2012, luego de escuchadas las partes y aquilatada la prueba documental y testifical, el Comisionado Especial, Hon. Wilfredo Alicea López, sostuvo que, a su entender, actuó correctamente la Registradora de la Propiedad al no inscribir la Escritura número 17 por falta de tracto y recomendó imponer sanciones disciplinarias al licenciado por violación a los Cánones 18 y 35 de los de Ética Profesional, 4 L.P.R.A. Ap. IX C. 18 y C. 35 (2002).

Por su parte, el licenciado Ayala Oquendo compareció y sostuvo que estaba en desacuerdo con el Comisionado Especial en cuanto a que la finca objeto de la Escritura 17, y por la cual se había iniciado la queja, era de carácter privativo de la señora Rivera Calderón. Expresó, además, varios atenuantes, entre ellos que la práctica de la Notaría constituye un noventa por ciento (90%) de su práctica y que se compensó económicamente a los quejosos.

Sometido el caso en sus méritos, pasamos a resolver.

II

Reiteradamente hemos señalado que la notaría requiere sumo esmero y cuidado. *In re Jorge A. Vera Vélez*, 148 D.P.R. 1 (1999). El notario está obligado a cumplir con la Ley y el Reglamento Notarial y los Cánones de Ética

Profesional. *Id.* Es por ello que el incumplimiento con los mismos puede redundar en severas sanciones disciplinarias.

Además, hemos expresado que "la fe pública notarial impone al notario el deber de hacer las averiguaciones mínimas que requieren las normas de la profesión al momento de autorizar el otorgamiento de la escritura. … El notario que autoriza una escritura no puede ignorar el estado registral de la propiedad sobre la cual las partes otorgan la escritura a la fecha del otorgamiento". *In re Rafael Torres Alicea*, 175 D.P.R. 456 (2009), en la pág. 460 (Citas omitidas). Estas averiguaciones mínimas exigidas están dirigidas a evitar que el notario, consciente o inconscientemente, dé fe de un hecho falso, violando así la fe pública notarial. *In re Vera Vélez, supra.*

En consecuencia en *In re Efraín Aponte Berdecía*, 161 D.P.R. 94 (2004), establecimos que un abogado notario infringe el Canon 18 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C 18, cuando viola las disposiciones de la Ley Notarial de Puerto Rico. Lo anterior dado que "[u]na vez un notario contraviene la ley vigente, incurre en una práctica notarial indeseable y contraviene el canon mencionado". *Íd.*, pág. 106.

Asimismo, dispusimos que autorizar una escritura sin conocer los antecedentes registrales mediante la realización de un estudio de título de la propiedad constituye, además de una violación a la fe pública notarial, una violación al Canon 35 de los de Ética

Profesional, 4 L.P.R.A. Ap. IX, C 35. *In re Torres Alicea*, *supra*, en las págs. 461-462. En este sentido, el abogado notario que "viola la fe pública notarial al no exponer la veracidad de unos hechos, automáticamente incumple con las disposiciones del Canon 35 del Código de Ética Profesional…". *In re Aponte Berdecía*, *supra*, en la pág. 107.

Igualmente, expresamos que no es necesario que el notario haya tenido intención de violar la fe pública notarial. Es suficiente con que la violación a ésta surja de la falta de cautela, de celo profesional o la requerida diligencia en el desempeño de la profesión. *In re Vera Vélez*, *supra*.

Así, dijimos que el notario que autoriza una escritura y hace constar en ella hechos contrarios a la realidad registral viola el Canon 35, *supra*. *Íd.* De igual manera, dispusimos que viola el Canon 18, *supra*, el notario que, por falta de diligencia, contravenga una disposición de la Ley Notarial. *In re Aponte Berdecía*, *supra*.

### III

En el caso ante nuestra consideración, somos del criterio de que el notario querellado infringió los Cánones 18 y 35 del Código de Ética Profesional, *supra*. Según Certificación del Registro de la Propiedad relativa a la finca objeto de la escritura autorizada por el notario querellado la misma era de carácter privativo de la señora Rivera Calderón, esposa del causante y madre del

vendedor. Fue en atención a ello que la Registradora de la Propiedad rechazó inscribir en el Registro, por falta de tracto, la Escritura 17.

El notario querellado aduce que son falsas las imputaciones hechas sobre que no hizo un estudio registral de la finca antes de autorizar la Escritura 17. Sin embargo, la copia de la escritura habida en el expediente sólo contiene una oración que sostiene "que les hice las advertencias pertinentes de Ley". Nada dispone, específicamente, sobre haber tenido ante sí un estudio de título o haber advertido a los otorgantes sobre la conveniencia de hacer uno y que éstos lo rechazaran.

Igualmente, sostuvo durante todas las etapas de este proceso que la finca objeto de la Escritura 17 era una ganancial y que, por tanto, podía ser adjudicada mediante partición de herencia del causante cuando es claro que la finca es de carácter privativo. El Registro es claro en ese asunto, toda vez que consta que la finca fue adjudicada a la señora Rivera Calderón por herencia. Sin embargo, posteriormente, se sostuvo que la finca pertenecía a ambos cónyuges. Si el notario querellado hubiese cumplido diligentemente con su función notarial hubiera advertido la necesidad de aclarar la información contradictoria en el Registro de la Propiedad. Además, se hubiese percatado que la inscripción a nombre de ambos cónyuges era un error.

Asimismo, del Informe de ODIN y del expediente se desprende que el licenciado Ayala Oquendo autorizó la

Escritura 17 antes de que los vendedores obtuviesen el permiso de segregación correspondiente. Por lo cual es claro que el notario querellado no podía autorizar la escritura objeto de esta queja y al así hacerlo violentó el artículo 2 de la Ley Notarial, 4 L.P.R.A. sec. 2002.

Igualmente, violó el artículo 2 de la Ley Notarial, *supra*, al no advertirles a los otorgantes sobre las consecuencias de adquirir el solar en las circunstancias en que lo estaban haciendo. Los notarios no pueden olvidar que "como principal instrumento de la fe pública, tiene[n] la indeclinable obligación de propiciar y cerciorarse de ese estado de conciencia informada en cliente [sic] para obtener el consentimiento integrado de los otorgantes al acto notarial". *In re Meléndez Pérez*, 104 D.P.R. 770 (1976), pág. 776.

En este sentido, no albergamos dudas de que, al infringir la fe pública notarial, el licenciado Ayala Oquendo violó los Cánones 18 y 35 de los de Ética Profesional, *supra*. Sus actuaciones no son cónsonas con el esmero y cuidado que requiere la profesión y minan la confianza de la ciudadanía en los notarios en general como funcionarios de la fe pública notarial.

De igual manera, la conducta de los notarios debe ser tal que se ajuste perfectamente a la sinceridad y honradez que exige nuestro Código de Ética. No actúa ni sincera ni honradamente aquel notario que da fe de hechos inciertos o sobre los cuales se tienen dudas como lo hizo aquí el licenciado Ayala Oquendo. De esta manera, el licenciado

Ayala Oquendo no sólo debía hacer el estudio de título pertinente sino también tenía la obligación de advertir específicamente las condiciones en que se estaba adquiriendo la finca. Asimismo, antes de autorizar cualquier instrumento público de traslación de dominio de los solares segregados de la finca matriz debió esperar la autorización de la agencia pertinente para realizar la segregación.

IV

Con anterioridad hemos dicho que a la hora de imponerse sanciones disciplinarias a un abogado que haya incurrido en conducta violatoria de los Cánones de Ética Profesional, *supra*, se considerarán los siguientes factores: (1) la buena reputación del abogado en la comunidad; (2) su historial previo; (3) si ésta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente, y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. *In re Mulero Fernández*, 174 D.P.R. 18 (2008) (Citas omitidas). Estos criterios nos sirven de guía al determinar la sanción que procede imponer.

En este caso resulta pertinente considerar que esta no es la primera vez que amonestamos al licenciado Ayala Oquendo. El notario querellado fue admitido al ejercicio

de la Abogacía el 26 de junio de 1985 y a la práctica de la Notaría el 2 de septiembre de 1986. El 2 de julio de 1993 emitimos una Resolución donde nos expresamos sobre la validez de una escritura que el licenciado Ayala Oquendo otorgara en el estado de Florida. Sostuvimos que el notario querellado carecía de autoridad para actuar como notario en el estado de Florida por lo cual la escritura de testamento abierto autorizada por él era nula y carecía de efecto jurídico en esta jurisdicción. De igual manera, el 31 de julio de 1992 se le apercibió que debía cumplir con los requerimientos de la Ley Notarial de 1987. Además, lo hemos apercibido varias veces por incumplir con los pagos de la cuota del Colegio de Abogados.[10] Por otro lado, el 22 de diciembre de 2005 emitimos una Opinión *Per Curiam* en el alfanumérico CP-2003-19 mediante la cual exoneramos al licenciado Ayala Oquendo del cargo por violación al Canon 24 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C 24. Igualmente debemos considerar que, luego de varias desavenencias, el licenciado Ayala Oquendo satisfizo en su totalidad un acuerdo de transacción privado con el quejoso.

Por todo lo expuesto, y considerando que hemos expresado de manera reiterada que "una transacción entre el abogado querellado y su cliente perjudicado no nos priva de ejercer nuestra jurisdicción disciplinaria", *In*

---

[10] Según se desprende del expediente se apercibió mediante Resolución en las siguientes fechas: 8 de diciembre de 1999, 10 de septiembre de 2004, 21 de junio de 2006, 21 de septiembre de 2007, 7 de octubre de 2008.

*re Criado Vázquez*, 155 D.P.R. 436 (2001), se ordena la separación inmediata del licenciado Ayala Oquendo de la abogacía por un término de seis meses. Se ordena al Alguacil General de este Tribunal que se incaute de los Protocolos y registros de testimonios de dicho notario.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


*In re*

Edmundo Ayala Oquendo                    CP-2008-8



SENTENCIA

San Juan, Puerto Rico, a 3 de mayo de 2012

Por los fundamentos expresados en la Opinión *Per Curiam* que antecede, los cuales se incorporan íntegramente a la presente, se ordena la separación inmediata del licenciado Ayala Oquendo del ejercicio de la abogacía por un término de **seis (6) meses**, contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia.

Se ordena al Alguacil General de este Tribunal que se incaute de los Protocolos y registros de testimonios de dicho notario.

Así lo pronunció, manda el Tribunal y certifica la Secretaría del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo